[No. 83377-0.   En Banc.]
Argued March 17, 2011.     Decided February 23, 2012.

*In the Matter of the Personal Restraint of* HARRY N.
CARRIER, *Petitioner*.

*Jeffrey E. Ellis* (of *Oregon Capital Resource Center*), for petitioner.

*Mark E. Lindquist, Prosecuting Attorney for Pierce County*, and *Kathleen Proctor* and *Melody M. Crick, Deputies*, for respondent.

¶1 STEPHENS, J. — Harry Carrier filed this untimely personal restraint petition asserting that his mandatory life sentence under the "two strikes" provision of the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, is invalid. He contends that the trial court erroneously counted a dismissed conviction from 1981 as one of the strikes. The commissioner denied review because Carrier's judgment and sentence does not itself indicate that the 1981 conviction was dismissed. We granted Carrier's motion to modify and accepted review. We conclude that the dismissal order attached as an exhibit to Carrier's personal restraint petition may be considered in determining whether the judgment and sentence is valid on its face. In light of the dismissal order, we hold that Carrier's life sentence is invalid because a court may not include a dismissed conviction under former RCW 9.95.240 (1957) in a defendant's criminal history as a POAA strike offense.

## FACTS AND PROCEDURAL HISTORY

¶2 In July 2004, the State charged Carrier with two counts of first degree child molestation (counts I and II),[1] sexual exploitation of a minor (count III), dealing in depictions of a minor engaged in sexually explicit conduct (count IV), and possession of depictions of a minor engaged in sexually explicit conduct (count V). The State filed a per-

---

[1] The State originally charged count I as first degree rape of a child but later amended the charge to first degree child molestation.

sistent offender notice, alleging that Carrier had a 1981 conviction for indecent liberties that qualified him for a life sentence as a "persistent offender" under the POAA if convicted on the current charges.

¶3 Carrier pleaded guilty to counts IV and V. The case proceeded to trial on the remaining counts. During a break at trial, Carrier agreed to plead guilty to count I in exchange for the State dismissing counts II and III. The plea agreement indicated that the State would seek a life sentence on count I based on Carrier's status as a "persistent offender." The court accepted Carrier's guilty plea on count I but prior to sentencing Carrier moved to withdraw his plea. The court denied the motion. Carrier then attempted to persuade the court that the 1981 conviction for indecent liberties did not count as a strike offense under the POAA. The trial court disagreed and sentenced Carrier to life imprisonment without the possibility of parole on count I, 60 months on count IV, and 12 months on count V, all to run concurrently. The Court of Appeals affirmed on direct appeal, issuing its mandate in July 2007.

¶4 Carrier filed this personal restraint petition directly with this court in July 2009. In his petition, Carrier contends that his life sentence is invalid under the POAA. He argues that because his 1981 conviction for indecent liberties was dismissed, the trial court improperly counted the conviction in his criminal history as a strike. Carrier attached to his petition a court order from 1985 dismissing the indecent liberties conviction under former RCW 9.95.240.[2] In response, the State argues that Carrier's personal restraint petition is untimely, as he filed it more than one year after his judgment and sentence became final. Recognizing the court may consider an untimely personal restraint petition based upon a facially invalid judgment and sentence, the State asserts that Carrier's life

---

[2] Former RCW 9.95.240 is a provision of the probation act that allowed courts to dismiss convictions after a defendant completed a term of probation.

sentence is valid because the trial court properly included the indecent liberties conviction in his criminal history.

¶5 The commissioner agreed with the State and dismissed the petition as untimely. Without reaching Carrier's substantive argument—that the trial court erred by including the dismissed conviction in his criminal history—the commissioner concluded that Carrier's judgment and sentence is valid on its face, subjecting his petition to the one-year time bar of RCW 10.73.090. The commissioner explained that the only evidence of invalidity on the judgment and sentence came from the 1985 dismissal order and considering the dismissal order would require improper elaboration beyond the "face" of the judgment and sentence.

¶6 Carrier moved to modify the commissioner's ruling, arguing that (1) the court should look to the dismissal order to determine whether the judgment and sentence is valid on its face and (2) the trial court erred by including the dismissed conviction in his criminal history as a POAA strike offense. We granted Carrier's motion, thereby accepting review.

ANALYSIS

¶7 Washington adopted the POAA, commonly known as the "three strikes law," by initiative in 1993. *State v. Thorne*, 129 Wn.2d 736, 746, 921 P.2d 514 (1996). The POAA imposes a mandatory term of life imprisonment without the possibility of release for defendants who qualify as "persistent offenders." RCW 9.94A.570. "Persistent offenders" are those who have been convicted of at least three "most serious offense[s]." Former RCW 9.94A.030(32)(a)(i)-(ii) (2004).[3] In 1996, the legislature expanded the reach of the POAA by adding a "two strikes" provision. LAWS OF 1996, ch. 289, § 1. Under the "two strikes" option, a defendant qualifies as a "persistent offender" if convicted of at least two

---

[3] Unless indicated otherwise, we refer to the law in effect at the time Carrier committed his current offenses. RCW 9.94A.345.

enumerated sex offenses. Former RCW 9.94A.030(32)(b)(i)-(ii) (2004).

¶8 The trial court sentenced Carrier to life imprisonment under the "two strikes" provision of the POAA. His 2004 conviction for first degree child molestation counted as one strike, and the court found that Carrier's 1981 conviction for indecent liberties was "comparable"[4] to first degree child molestation and counted as a second strike.

¶9 Carrier does not dispute the trial court's comparability finding. He agrees that indecent liberties can serve as a strike under the POAA. Instead, he argues that because his indecent liberties conviction was dismissed under former RCW 9.95.240, the trial court improperly counted the conviction in his criminal history as a strike for purposes of the POAA. *See Thorne*, 129 Wn.2d at 779 (explaining that the POAA "is essentially a sentence enhancement statute which is based on the past criminal history of a defendant").

¶10 A judgment and sentence is invalid if it imposes a sentence in excess of the punishment authorized by law. *In re Pers. Restraint of Cruze*, 169 Wn.2d 422, 426-27, 237 P.3d 274 (2010); *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 866-67, 50 P.3d 618 (2002). If Carrier's judgment and sentence wrongly included his 1981 conviction for indecent liberties in his criminal history, then he would escape the reach of the POAA. His mandatory life sentence would exceed the punishment authorized by law, rendering his judgment and sentence invalid.

¶11 Because Carrier's personal restraint petition is untimely, we must first determine whether the judgment and sentence is valid on its face. If the judgment and sentence is invalid, then Carrier's personal restraint petition is not subject to the one-year time bar under RCW 10.73.090. The question breaks down into two parts. First, can we consider

---

[4] The POAA classifies a defendant as a "persistent offender" if the defendant has a prior conviction that is "comparable" to one of the enumerated sex offenses. Former 9.94A.030(32)(b)(ii).

the order dismissing Carrier's indecent liberties conviction in deciding if an error exists on the "face" of the judgment and sentence? Second, is the sentence invalid because the trial court included Carrier's dismissed conviction in his criminal history as a strike under the POAA? If we answer both questions in the affirmative, we must then decide whether Carrier has shown the requisite prejudice to obtain relief on his personal restraint petition.

I.  Consideration of the Dismissal Order in Examining the "Face" of the Judgment and Sentence

¶12 "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). The parties do not dispute that if the trial court improperly included Carrier's 1981 indecent liberties conviction in his criminal history, then the judgment and sentence is invalid. As a threshold question, however, we must address whether this invalidity is evident from the "face" of Carrier's judgment and sentence.

¶13 The judgment and sentence does not itself reveal that a court dismissed Carrier's indecent liberties conviction. Evidence of dismissal comes from a separate dismissal order issued in 1985. The commissioner concluded that we cannot consider a document such as Carrier's dismissal order in deciding whether the judgment and sentence is valid on its face.

¶14 We recently reviewed the meaning of the phrase "on its face" under RCW 10.73.090(1). In *In re Personal Restraint of Coats*, 173 Wn.2d 123, 138, 267 P.3d 324 (2011), we explained that "[s]ince at least 1947, we have not limited our review to the four corners of the judgment and sentence." After summarizing our recent precedent, we noted that "[t]]aken together, we have found invalidity based upon charging documents, verdicts, and plea statements of defen-

dants on plea of guilty." *Id.* at 140. On the other hand, "[w]e have not rested our decision on jury instructions, trial motions, and other documents that relate to whether the defendant received a fair trial." *Id.*

¶15 Our precedent should not be read to impose a bright-line rule or an exhaustive list of documents that we may consider in determining whether a judgment and sentence is "valid on its face." RCW 10.73.090(1). Rather, it permits consideration of documents that bear on the trial court's authority to impose a valid judgment and sentence.

¶16 Carrier's 1985 dismissal order is a court document of unquestionable authenticity that has a direct bearing on the trial court's authority to impose a life sentence. We therefore consider the dismissal order insofar as it reveals that Carrier's judgment and sentence includes the dismissed indecent liberties conviction in his criminal history.

## II. Dismissed Convictions under Former RCW 9.95.240 and Criminal History

¶17 Given our consideration of the dismissal order, the question becomes whether including the indecent liberties conviction in Carrier's judgment and sentence as criminal history renders his life sentence invalid. Under the SRA, the term " '[c]riminal history' means the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere." Former RCW 9.94A.030(13) (2004). "Criminal history" does not include vacated convictions. Former RCW 9.94A.030(13)(b) ("A conviction may be removed from a defendant's criminal history only if it is vacated pursuant to RCW 9.96.060, 9.94A.640, 9.95.240, or a similar out-of-state statute, or if the conviction has been vacated pursuant to a governor's pardon.").

¶18 Carrier contends that his dismissed conviction is not a "conviction" within the definition of former RCW 9.94A-.030(11) (2004). Alternatively, he argues that the dismissal

order effectively vacated the indecent liberties conviction, excluding it from his criminal history.

### A. Dismissed Convictions under RCW 9.95.240 and "Convictions" under the SRA

¶19 A defendant's "criminal history" consists of the defendant's "prior convictions." Former RCW 9.94A.030(13). The SRA defines "conviction" to mean "an adjudication of guilt pursuant to Titles 10 or 13 RCW and includes a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty." Former RCW 9.94A.030(11).[5]

¶20 Carrier does not dispute that he was convicted of indecent liberties in 1981 when he pleaded guilty to that charge. However, under former RCW 9.95.240 (the dismissal provision of the pre-SRA probation act), the trial court suspended imposition of Carrier's sentence and granted him probation. Upon completion of his term of probation, the court allowed Carrier to withdraw his guilty plea and enter a plea of not guilty. The court then dismissed the charge under former RCW 9.95.240. According to Carrier, because the conviction ended in dismissal, it does not qualify as a "conviction" under former RCW 9.94A.030(11) and (13). We disagree.

¶21 First, courts have recognized that a pre-SRA conviction that results in a suspended or deferred sentence continues to qualify as a "conviction" under the SRA. *See State v. Whitaker*, 112 Wn.2d 341, 346, 771 P.2d 332 (1989) (recognizing that a "deferred sentence is treated as a 'conviction served' for purposes of the SRA"); *State v. Partida*, 51 Wn. App. 760, 762, 756 P.2d 743 (1988) (noting that defendant "stands convicted . . . for purposes of the SRA" despite an "order of dismissal after fulfilling the terms of his probation"); *State v. Harper*, 50 Wn. App. 578, 580, 749 P.2d 722 (1988) (noting that regardless of whether

---

[5] Title 10 RCW outlines the criminal procedures for adult offenders, while Title 13 RCW deals with juvenile offenders.

the sentence is deferred or suspended, "the defendant has been adjudged guilty").

¶22 Early amendments to the SRA also support the notion that a dismissed conviction remains a "conviction" under the SRA. As originally enacted, the SRA defined "conviction" as "an adjudication of guilt pursuant to Titles 10 or 13 RCW." Former RCW 9.94A.030(4) (1981). In 1986, at the request of the Sentencing Guidelines Commission, the legislature changed the definition to state that a "conviction" is "an adjudication of guilt pursuant to Titles 10 or 13 RCW and includes a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty." LAWS OF 1986, ch. 257, § 17(6); WASH. SENTENCING GUIDELINES COMM'N, *Sentencing Guidelines Implementation Manual* cmt. at II-8 (1987). According to the Sentencing Guidelines Commission, this change clarified the inclusive meaning of "conviction":

> In determining if a prior conviction existed for the purpose of calculating the offender score, it was unclear if a crime for which a plea of guilty had been entered but a sentencing had not taken place, qualified as a "prior conviction." The amendment states that a finding of guilt determined by a jury or a judge (upon entry of a plea or otherwise) is a conviction for the purpose of the SRA.

WASH. SENTENCING GUIDELINES COMM'N, *supra*, cmt. at II-8. This explanation suggests that for purposes of defining "conviction," the SRA focuses on the initial finding of guilt, not what occurs later. *Cf. Harper*, 50 Wn. App. at 580 ("The focus of the SRA's provisions for the determination of offender scores is on the fact of prior convictions and the nature of those convictions—not on the type of sentence imposed therefor.").

¶23 Finally, the language of former RCW 9.95.240 itself demonstrates that a dismissed conviction remains a "conviction" for at least some purposes.[6] Former RCW 9.95.240

---

[6] Though former RCW 9.95.240 predates the SRA and is therefore not governed by the definition of "conviction" in former RCW 9.94A.030(11), the language of

states that after a defendant completes a term of probation, the court may allow the defendant to withdraw the guilty plea and enter a plea of not guilty. The court may then dismiss the information or indictment, releasing the defendant "from all penalties and disabilities resulting from the offense or crime of which he [or she] has been convicted." *Id.* However, the last clause of former RCW 9.95.240 contains an exception that states, "[I]n any subsequent prosecution, for any other offense, such *prior conviction* may be pleaded and proved, and shall have the same effect as if probation had not been granted, or the information or indictment dismissed." *Id.* (emphasis added). Thus, while former RCW 9.95.240 releases the defendant from all penalties and disabilities associated with the conviction, it does not erase the fact of the conviction itself. Nor does it restrict the State's ability to use the conviction in a later prosecution for at least some limited purposes.

¶24 Carrier argues that if a dismissed conviction remains a "conviction" under the SRA, then any initial adjudication of guilt qualifies as a "conviction." Carrier posits a scenario in which a defendant, after having been found guilty at trial, obtains a reversal on appeal and is acquitted following a retrial. We find this analogy unpersuasive. Under former RCW 9.95.240, a court dismisses the conviction only after the defendant is adjudicated guilty and serves a sentence of probation. While a defendant may later be released from some of the legal consequences of his conviction, a dismissal under former RCW 9.95.240 does not invalidate or erase the conviction. The result under former RCW 9.95.240 is entirely different in kind from the situation posited by Carrier. We conclude that Carrier's dismissed conviction under former RCW 9.95.240 remains a "conviction" under the SRA.

---

former RCW 9.95.240 nonetheless highlights the fundamental flaw in Carrier's argument.

B. Dismissal under Former RCW 9.95.240 and Vacation under the SRA

¶25 Under the SRA, vacation of a conviction provides the sole mechanism for removing the conviction from a defendant's criminal history. Former RCW 9.94A.030(13)(b). The SRA outlines the procedure for vacating a felony conviction in former RCW 9.94A.230 (1987), *recodified as* RCW 9.94A.640 (Laws of 2001, ch. 10, § 6).[7] Under the vacation statute, the court in its discretion "may clear the record of conviction" by allowing the defendant to withdraw a guilty plea and enter a plea of not guilty, after which the court may then dismiss the indictment or information. Former RCW 9.94A.640(1) (1987). Once the court vacates the conviction, "the fact that the offender has been convicted of the offense shall not be included in the offender's criminal history for purposes of determining a sentence in any subsequent conviction, and the offender shall be released from all penalties and disabilities resulting from the offense." Former RCW 9.94A.640(3).

¶26 Carrier argues that dismissing a conviction pursuant to former RCW 9.95.240 is equivalent to vacating a conviction under former RCW 9.94A.640. He believes that the dismissal statute is essentially a pre-SRA version of the vacation statute and that the two statutes have the same legal effect in removing convictions from a defendant's criminal history.

¶27 This is not the first time we have addressed the interplay between the pre-SRA dismissal statute, former RCW 9.95.240, and the SRA vacation statute, former RCW 9.94A.640. *See State v. Breazeale*, 144 Wn.2d 829, 832-33, 31 P.3d 1155 (2001). In *Breazeale*, two defendants who had their convictions dismissed under former RCW 9.95.240 petitioned the trial court to vacate their convictions. *Id.* at

---

[7] We refer to the recodified version of the vacation statute, former RCW 9.94A.640.

833-34. They sought vacation to prevent the Washington State Patrol from disseminating their conviction records to prospective employers. *See id.* The patrol refused to halt its dissemination of the records, arguing that dismissal under former RCW 9.95.240 did not equate to vacating a conviction under the SRA. *Id.* at 836-37.

¶28 We disagreed with the patrol, explaining that "the Legislature intended RCW 9.95.240 and RCW 9.94A.[640[8]] to have the same practical effect." *Id.* at 837. We noted that the dismissal statute, RCW 9.95.240, " 'is a legislative expression of public policy ... [that] a deserving offender [is restored] to his [or her] preconviction status as a full-fledged citizen.' " *Id.* (alterations in original) (quoting *Matsen v. Kaiser*, 74 Wn.2d 231, 237, 443 P.2d 843 (1968) (Hamilton, J., concurring)). We also explained that "[t]he Legislature intended to prohibit all adverse consequences of a dismissed conviction, with the one exception of use in a subsequent criminal conviction but with no additional implied exceptions." *Id.* at 837-38.

¶29 Commentary from the Sentencing Guidelines Commission reinforced the strong parallel between former RCW 9.95.240 and former RCW 9.94A.640. We found persuasive Professor David Boerner's observation that " '[v]acation operates to "clear the record of conviction" in the same manner as did the Probation Act [RCW 9.95.240].' " *Id.* at 838 (alterations in original) (quoting DAVID BOERNER, SENTENCING IN WASHINGTON § 11.6, at 11-7 (1985)). We also relied on a comment from the Sentencing Guidelines Commission stating that " '[t]his vacation of the conviction [under RCW 9.94A.640] is analogous to the dismissal obtained under RCW 9.95.240.' " *Id.* (quoting WASH. SENTENCING GUIDELINES COMM'N, *supra*, cmt. at II-21 (1984)). We held that "the Legislature intended RCW 9.95.240 to function in the same manner as the later statute, RCW 9.94A.[640], and that

---

[8] In *Breazeale* we interpreted the prior version of the vacation statute, RCW 9.94A.230, which the legislature later recodified as RCW 9.94A.640.

both statutes provide courts with the authority to vacate records of conviction." *Id.* at 843-44.

¶30 The State and Carrier disagree over the holding in *Breazeale*. Carrier reads *Breazeale* to say that a dismissal under former RCW 9.95.240 is equivalent to vacating a conviction under former RCW 9.94A.640. The State acknowledges *Breazeale*'s clear expression that the two statutes were intended to have the same effect. Yet the State reads *Breazeale* to require a two-step process to vacation of a pre-SRA conviction: a defendant must seek dismissal of the conviction under former RCW 9.95.240 and then, under the same statute, the defendant must also petition to vacate the conviction. Some of the language in *Breazeale* supports the State's reading. *Id.* at 838 ("Without the ability to petition the court to *also* vacate the conviction record and compel the Patrol to restrict public access to those records, the entitlement provided by the statute and intended by the Legislature is rendered meaningless." (emphasis added)); *id.* ("We hold that a superior court has the statutory authority under RCW 9.95.240 to grant a petition to vacate the conviction record *following* dismissal of the charge under the same statute." (emphasis added)).

¶31 We take this opportunity to clarify the holding in *Breazeale*. The entire premise of this court's analysis in *Breazeale* was that the legislature intended the SRA vacation statute to have the same effect as the pre-SRA dismissal statute. *See id.* at 837-39. Requiring defendants to petition the court twice under former RCW 9.95.240—first to obtain a dismissal and then to vacate the conviction—serves no purpose. Moreover, at the time Carrier obtained a dismissal of his conviction, it was a one-step process and no procedure for vacating the conviction existed. *Breazeale* holds that a court's dismissal of a pre-SRA conviction pursuant to former RCW 9.95.240 has the same legal effect as vacating the conviction under the SRA.

¶32 Were we deciding this case strictly under *Breazeale*, Carrier would succeed in his claim that the trial court

wrongly included his dismissed conviction in his criminal history. The SRA specifies that "[a] conviction may be removed from a defendant's criminal history only if it is *vacated* pursuant to RCW 9.96.060, 9.94A.640, [or] *9.95.240* . . . ." Former RCW 9.94A.030(13)(b) (emphasis added).[9] Under *Breazeale*, Carrier's dismissed indecent liberties conviction would be tantamount to a vacated conviction, and former RCW 9.95.240 would therefore exclude the conviction from Carrier's criminal history.

¶33 In response to *Breazeale*, however, the legislature amended former RCW 9.95.240 to essentially require the two-step process for vacation of pre-SRA convictions that the State advocates for. In 2003, the legislature added a new subsection to the dismissal statute that states:

> After the period of probation has expired, the defendant may apply to the sentencing court for a vacation of the defendant's record of conviction under RCW 9.94A.640. The court may, in its discretion, clear the record of conviction if it finds the defendant has met the equivalent of the tests in RCW 9.94A.640(2) as those tests would be applied to a person convicted of a crime committed before July 1, 1984.

LAWS OF 2003, ch. 66, § 1(2)(a).

¶34 The 2003 amendment to former RCW 9.95.240 changes the analysis for defendants with pre-SRA felony convictions in two ways. First, it requires defendants who have obtained a dismissal to take the further step of petitioning the court to vacate the conviction, whereas under *Breazeale* and the preamendment version of former RCW 9.95.240, a dismissed conviction was considered the same as a vacated conviction.

¶35 Second, the amendment routes defendants through former RCW 9.94A.640 rather than relying solely on former

---

[9] The legislature added this provision to the definition section of "criminal history" shortly after *Breazeale*. LAWS OF 2002, ch. 107, § 2. While the legislature apparently did not intend to respond to or codify *Breazeale*, the provision nonetheless reflects *Breazeale*'s holding that a court may vacate a pre-SRA conviction under the dismissal statute, former RCW 9.95.240.

RCW 9.95.240 for authority to vacate the conviction. This is significant because former RCW 9.94A.640 makes it harder to vacate convictions than former RCW 9.95.240. For example, no restriction exists under former RCW 9.95.240 with regard to the type of conviction that a court may vacate. But former RCW 9.94A.640(2) imposes numerous restrictions, including a prohibition against vacating convictions for "crime[s] against persons." In short, the 2003 amendment to former RCW 9.95.240 ensures that defendants with pre-SRA felony convictions "are subject to the same conditions and restrictions as apply to [defendants with] SRA felony convictions." H.B. REP. on Substitute H.B. 1346, at 4, 58th Leg., Reg. Sess. (Wash. 2003).

¶36 If the 2003 amendment to former RCW 9.95.240 applies to Carrier, we cannot consider his 1981 conviction vacated. Carrier never petitioned the court to vacate the conviction under the amended version of former RCW 9.95.240; he merely petitioned for dismissal under the preamendment version of the statute. In any case, the indecent liberties conviction qualifies as a "crime against persons" under former RCW 9.94A.640. Former RCW 43.43.830(5) (2004). Thus, even if Carrier had petitioned to vacate the conviction under the amended version of former RCW 9.95.240, the court would have denied the petition.

¶37 Carrier contends that applying the amended version of former RCW 9.95.240 to him results in a retroactive application of the statute that infringes a vested right. We therefore must decide whether the 2003 amendment to former RCW 9.95.240 applies retroactively and, if so, whether Carrier has a vested right in the vacated status of his conviction that would prevent retroactive application in his case.

*1. Retroactivity of the 2003 Amendment to Former RCW 9.95.240*

¶38 For purposes of sentencing, we look to the law in effect at the time the defendant committed the current

offense. RCW 9.94A.345; *see also State v. Varga*, 151 Wn.2d 179, 191, 86 P.3d 139 (2004) ("We have repeatedly held that sentencing courts must 'look to the statute in effect at the time [the defendant] committed the [current] crimes' when determining defendants' sentences." (alterations in original) (quoting *State v. Delgado*, 148 Wn.2d 723, 726, 63 P.3d 792 (2003))). Carrier received a life sentence for his commission of first degree child molestation between June and July 2004. At that time, the amended version of former RCW 9.95.240 was in effect.

¶39 To say that we look to the law in effect at the time the defendant committed the offense does not answer whether the law applies retroactively or prospectively. *See State v. Smith*, 144 Wn.2d 665, 672-73, 30 P.3d 1245 (2001), *superseded by statute*, LAWS OF 2002, ch. 107, § 1. A statute applies retroactively if the precipitating event under the statute occurred before the date of enactment. *State v. Pillatos*, 159 Wn.2d 459, 471, 150 P.3d 1130 (2007) (citing *State v. Belgarde*, 119 Wn.2d 711, 722, 837 P.2d 599 (1992)). Conversely, a statute applies prospectively if the precipitating event under the statute occurred after the date of enactment. *City of Seattle v. Ludvigsen*, 162 Wn.2d 660, 668, 174 P.3d 43 (2007) (quoting *State v. T.K.*, 139 Wn.2d 320, 329-30, 987 P.2d 63 (1999)). To determine what event precipitates or triggers application of the statute, we look to the subject matter regulated by the statute. *T.K.*, 139 Wn.2d at 330 (citing *In re Estate of Burns*, 131 Wn.2d 104, 112, 928 P.2d 1094 (1997)). We presume that a statute applies prospectively, unless the legislature intends otherwise. *Burns*, 131 Wn.2d at 110.

¶40 Here, while the amended version of former RCW 9.95.240 outlines procedures for vacating a conviction, the primary subject matter regulated by former RCW 9.95.240 continues to be the dismissal of pre-SRA convictions upon completion of a term of probation. Thus, dismissal of a pre-SRA conviction constitutes the precipitating event that

triggers application of the statute. In Carrier's case, this event occurred long before the legislature amended former RCW 9.95.240 in 2003 to require the additional step of vacating the conviction under the stricter requirements of former RCW 9.94A.640. To the extent Carrier must comply with the amended version of former RCW 9.95.240 to vacate his conviction, the amendment applies retroactively. *Cf. T.K.*, 139 Wn.2d at 331-32 (amended statute would apply retroactively if it required defendants to meet new conditions for sealing juvenile records where defendants had already met conditions for sealing records under former statute).

¶41 Although the 2003 amendment to former RCW 9.95.240 does not contain an express statement of retroactivity, the legislature clearly intended this result. If the 2003 amendment applied only to defendants who petitioned to dismiss their pre-SRA convictions after 2003, then the amendment would not apply to anyone. Courts have not granted probation since the enactment of the SRA in 1984. *See* BOERNER, *supra*, § 4.1, at 4-1 (noting that "[t]he power to modify the terms of a sentence after its imposition, which was inherent with probationary sentences, does not generally exist under the [SRA]"). And the dismissal statute limited the time within which defendants who received probation could seek dismissal of their convictions. Former RCW 9.95.240 (stating that a defendant can seek dismissal "at any time prior to the expiration of the maximum period of punishment for the offense for which he [or she] has been convicted"). The legislature must have intended the 2003 amendment to apply to defendants who, like Carrier, had their convictions dismissed under former RCW 9.95.240 prior to 2003. We conclude that the 2003 amendment to former RCW 9.95.240 applies retroactively.

*2. Vested Right in the Vacated Status of a Conviction*

¶42 A statute may not be applied retroactively to infringe a vested right. *In re F.D. Processing, Inc.*, 119 Wn.2d

452, 463, 832 P.2d 1303 (1992). This notion finds root in the due process clauses of the Fifth and Fourteenth Amendments. *See Godfrey v. State*, 84 Wn.2d 959, 962-63, 530 P.2d 630 (1975); *In re McGrath's Estate*, 191 Wash. 496, 509, 71 P.2d 395 (1937). While due process generally does not prevent new laws from going into effect, it does prohibit changes to the law that retroactively affect rights which vested under the prior law. *Godfrey*, 84 Wn.2d at 962-63. We have said that

> [a] vested right, entitled to protection from legislation, must be something more than a mere expectation based upon an anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another.

*Id.* at 963 (emphasis omitted); *see also Gillis v. King County*, 42 Wn.2d 373, 377, 255 P.2d 546 (1953) (" '[T]he term [vested right] has been commonly held to connote an immediate, fixed right of present or future enjoyment and an immediate right of present enjoyment, or a present fixed right of future enjoyment.' " (internal quotation marks omitted) (quoting *Adams v. Ernst*, 1 Wn.2d 254, 264-65, 95 P.2d 799 (1939))).

¶43 Carrier believes that our analysis in *T.K.* is on point. There the defendant met the statutory conditions for sealing his juvenile court records but did not petition the court to seal the records until after the legislature changed the statutory requirements. *T.K.*, 139 Wn.2d at 323-24. The issue arose whether T.K. had a vested right under the former law to have his records sealed. *Id.* at 333-34. We found that T.K. did have a vested right, explaining that "the right to sealing became absolute [i.e., vested] upon completion of the statutory conditions." *Id.* at 334. Because the right vested prior to the change in the law, we concluded that the new law could not retroactively require T.K. to meet the stricter conditions for obtaining a sealing order. *Id.* at 334-35.

¶44 This court distinguished *T.K.*'s vested rights analysis in *Varga*, 151 Wn.2d at 197. In that case, the defendant claimed a vested right in the "washed out" status of his prior convictions. *Id.* The legislature had amended the SRA in a manner that required courts to include previously "washed out" offenses in calculating a defendant's offender score. *Id.* In distinguishing *T.K.* we said:

> Unlike T.K., Varga could not exercise his alleged "right" to the "washed out" status of his prior convictions until he committed a new offense. T.K. on the other hand could have moved the court to expunge his juvenile adjudication under the former version of RCW 13.50.050(11). Given that Varga's ability to exercise his right depended on his commission of a new offense, we cannot conclude that Varga is entitled to the same protections as T.K.

*Id.*

¶45 This case more closely resembles *T.K.* We found a vested right in *T.K.* because the defendant had met all the statutory conditions for obtaining relief prior to the change in the law. Satisfaction of the preamendment version of the statute required the court to seal T.K.'s juvenile records. Similarly, Carrier met all the conditions for vacating his conviction under the preamendment version of former RCW 9.95.240. The vacated status of his conviction was not contingent on any future occurrence, and there were no conditions otherwise left unfulfilled. Prior to the 2003 amendment to former RCW 9.95.240, a court would have had no discretion but to consider Carrier's indecent liberties conviction vacated and excluded from his criminal history.[10]

---

[10] The dissent misses this critical point, relying on *Varga* to conclude the 2003 amendment does not apply retroactively but merely enhances penalties upon the commission of a new crime. Dissent at 822-23, 824-25. But in *Varga* we recognized that a law reaching back to prior events is not retroactive " 'merely because it relates to prior facts or transactions *where it does not change their legal effect.*' " 151 Wn.2d at 195 (emphasis added) (quoting *State v. Scheffel*, 82 Wn.2d 872, 879, 514 P.2d 1052 (1973)). The 2003 amendment changes the legal effect of convictions

¶46 In contrast, defendants who have convictions "washed out" cannot claim a vested right because a "washed out" conviction does not implicate the same degree of certainty and finality that attaches to a vacated conviction. A defendant's prior conviction may be considered "washed out" under one version of the SRA and not "washed out" under another version. But once a conviction is vacated, it cannot be revived for purposes of enhancing a defendant's criminal history. Carrier's indecent liberties conviction was effectively vacated prior to the 2003 amendment to former RCW 9.95.240. The State cannot apply the amendment retroactively to infringe Carrier's vested right in the vacated status of his conviction.

C.   The "Subsequent Prosecution" Exception of Former RCW 9.95.240

¶47 The State argues that even if Carrier's conviction was vacated by former RCW 9.95.240, it may still count as a strike offense under the POAA. The State relies on the "subsequent prosecution" exception of former RCW 9.95.240, which provides, "[I]n any subsequent prosecution, for any other offense, such prior conviction may be pleaded and proved, and shall have the same effect as if probation had not been granted, or the information or indictment dismissed." The State believes this exception authorizes the use of dismissed or vacated convictions under former RCW 9.95.240 as criminal history in subsequent prosecutions. Carrier argues that the "subsequent prosecution" exception of former RCW 9.95.240 cannot refer to using prior convictions as criminal history because the concept of criminal history did not exist until the adoption of the SRA.

¶48 The State relies on two Court of Appeals cases to support its argument that the "subsequent prosecution" exception authorizes the use of Carrier's dismissed conviction as a strike under the POAA. In *State v. Wade*, 44 Wn.

that were effectively vacated prior to its passage. This is quite different from the situation in *Varga*.

App. 154, 721 P.2d 977 (1986), the trial court included in the defendant's criminal history a pre-SRA conviction that had been dismissed under former RCW 9.95.240. The defendant appealed, contending that his dismissed conviction could not count toward his criminal history. *Id.* at 159. The Court of Appeals disagreed. *Id.* at 160. Relying on the "subsequent prosecution" exception of former RCW 9.95.240, the court stated, "Even though a conviction has been dismissed, the effect of the conviction is preserved as to any subsequent prosecution for any other offense." *Id.* (citing *State v. Braithwaite*, 92 Wn.2d 624, 628, 600 P.2d 1260 (1979), *overruled on other grounds by State v. Hennings*, 100 Wn.2d 379, 390, 670 P.2d 256 (1983)).

¶49 The same factual situation arose in *State v. Moore*, 75 Wn. App. 166, 876 P.2d 959 (1994). Citing *Wade*'s interpretation of the "subsequent prosecution" exception, the Court of Appeals concluded that the trial court properly counted Moore's dismissed conviction in his offender score. *Id.* at 171. *Wade* and *Moore* therefore stand for the proposition that the "subsequent prosecution" exception of former RCW 9.95.240 allows the State to use a dismissed conviction in a later prosecution as criminal history.

¶50 While *Wade* and *Moore* support the State's argument here, both cases misread this court's decision in *Braithwaite*, 92 Wn.2d 624. In *Braithwaite*, the State sought to have the defendant convicted under the habitual criminal statute by relying on a prior conviction that had been dismissed pursuant to former RCW 9.95.240. *See State v. Braithwaite*, 18 Wn. App. 767, 769, 572 P.2d 725 (1977). We held that the "subsequent prosecution" exception of former RCW 9.95.240 authorized using the defendant's dismissed conviction as a predicate offense for finding the defendant to be a habitual criminal. *See Braithwaite*, 92 Wn.2d at 629-30. The Court of Appeals in *Wade*, and later in *Moore*, concluded that if *Braithwaite* allowed the use of a dismissed conviction as a predicate offense under the habitual criminal statute, it also permits using a dismissed conviction as criminal history under the SRA.

¶51 This reading stretches *Braithwaite* too far. Using a dismissed conviction as a predicate offense under the habitual criminal statute is not the same as including a dismissed conviction in a defendant's criminal history as a strike under the POAA. The POAA "is not a reenactment of the [habitual criminal] statute." *Thorne*, 129 Wn.2d at 777. "Under the habitual criminals act, this court mandated a number of procedural safeguards, including charging by information, a right to a jury trial on the charge in the supplemental information, and proof of the 'elements' of the status of being a habitual criminal beyond a reasonable doubt." *Id.* The POAA, on the other hand, "is a sentencing statute and not a statute defining the elements of a crime." *Id.* at 779; *see also id.* (noting that the POAA "is essentially a sentence enhancement statute which is based on the past criminal history of a defendant"). "[N]o 'charging document' is required with regard to the [POAA] because no crime is being charged; rather, a sentence is being imposed." *Id.*

¶52 Former RCW 9.94A.640 highlights this critical distinction between using prior convictions as an element of a charge and using them as criminal history. Like former RCW 9.95.240, former RCW 9.94A.640 contains an exception that authorizes the limited use of vacated convictions in later prosecutions. The exception states, "Nothing in this section affects or prevents the use of an offender's prior conviction in a later criminal prosecution." Former RCW 9.94A.640(3). The statute does not explain for what purpose the State may use a vacated conviction in a "later criminal prosecution." But an earlier clause specifies at least one prohibited use: "[T]he fact that the offender has been convicted of the offense *shall not be included in the offender's criminal history* for purposes of determining a sentence in any subsequent conviction." *Id.* (emphasis added).

¶53 Commentary from the Sentencing Guidelines Commission sheds further light on the meaning of the "later criminal prosecution" exception in former RCW 9.94A.640:

This vacation of the conviction is analogous to the dismissal obtained under RCW 9.95.240 (deferred sentence) in that . . . it can be pleaded and proved as an element of a crime in a later prosecution for the limited number of offenses whose classification as a felony requires proof of a prior conviction (e.g., Communicating With a Minor For Immoral Purposes, RCW 9A.44.110). A vacated conviction cannot be used as criminal history.

WASH. SENTENCING GUIDELINES COMM'N, *supra*, at II-21.

¶54 Similarly, Professor Boerner has observed with regard to the "later criminal prosecution" exception of former RCW 9.94A.640 that "the Legislature's intent is clear that a vacated conviction may constitute an element of a future crime. This continues the policy expressed in the Probation Act . . . ." BOERNER, *supra*, § 11.6(a), at 11-8 (footnote omitted). Professor Boerner has also explained that "it is clear that while a vacated conviction may form the basis for a determination of guilt in a subsequent prosecution, it may not be used to determine the appropriate punishment for that or any other subsequent offense." *Id.* § 11.6(b), at 11-9.

¶55 From the language of former RCW 9.94A.640 and its commentary we can distill the following principles as to the meaning of the "later criminal prosecution" exception: (1) a vacated conviction under former RCW 9.94A.640 may not be used as criminal history—i.e., to determine the appropriate *punishment* for that or any other subsequent offense; (2) a vacated conviction under former RCW 9.94A.640 may be used as an element of a crime—i.e., to form the basis for a determination of *guilt* in a later prosecution; and (3) using a vacated conviction as an element of a crime under former RCW 9.94A.640 continues the policy of using a dismissed conviction as an element of a crime under former RCW 9.95.240.

¶56 The only question left open is whether, like the "later criminal prosecution" exception in former RCW 9.94A.640, the "subsequent prosecution" exception in former RCW 9.95.240 prohibits using dismissed convictions as criminal

history. We believe it does. Given the commentary from the Sentencing Guidelines Commission, the legislature intended the "later criminal prosecution" exception under former RCW 9.94A.640 to carry the same limited meaning as the "subsequent prosecution" exception under former RCW 9.95.240. It would be incongruous for the legislature to prevent vacated convictions from coming into a defendant's criminal history but allow dismissed convictions, which the SRA considers "vacated," to constitute criminal history. We therefore conclude that the "subsequent prosecution" exception under former RCW 9.95.240 does not allow using dismissed convictions as criminal history.[11]

¶57 The State argues that the "subsequent prosecution" exception of former RCW 9.95.240 nonetheless authorizes using Carrier's dismissed conviction as a strike offense under the POAA. Yet counting the conviction as a strike would first require the dismissed conviction to be included in Carrier's criminal history. The POAA "is essentially a sentence enhancement statute which is based on the past criminal history of a defendant." *Thorne*, 129 Wn.2d at 779. Unlike the habitual criminal statute and other statutes that require a predicate offense to be pleaded and proved as "elements" of a "charge," *see id.* at 777-78, the POAA relies on criminal history for purposes of enhancing a sentence, *see id.* at 780 (rejecting the argument that "prior criminal history is like an element of the charge" under the POAA). Because the "subsequent prosecution" exception of former RCW 9.95.240 does not allow using dismissed convictions as criminal history, it follows that the exception does not authorize using dismissed convictions as a strike under the POAA. To the extent the Court of Appeals' decisions in *Wade* and *Moore* suggest differently, they are disavowed for wrongly extending *Braithwaite*.

---

[11] The fact that former RCW 9.95.240 does not contain an express prohibition against using prior convictions as criminal history is no surprise, as the concept of criminal history did not exist prior to the SRA.

¶58 The trial court erred by including Carrier's dismissed conviction in his criminal history as a strike under the POAA. Carrier's life sentence is therefore invalid, and his personal restraint petition is not subject to the one-year time bar of RCW 10.73.090.

### III. Prejudice

██ ██ ¶59 In addition to showing that his judgment and sentence is invalid on its face, Carrier must demonstrate that a fundamental defect of a nonconstitutional nature has resulted in a complete miscarriage of justice. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007). Imposition of an unlawful sentence is a fundamental defect. *In re Pers. Restraint of Call*, 144 Wn.2d 315, 331, 28 P.3d 709 (2001). And we have little trouble concluding that to allow Carrier to remain wrongly subject to a life sentence would constitute a complete miscarriage of justice. Carrier has met his burden of showing prejudice.

### CONCLUSION

¶60 We may consider the dismissal order attached to Carrier's personal restraint petition in deciding whether his judgment and sentence is valid on its face. The dismissal order indisputably shows that Carrier's 1981 conviction for indecent liberties was dismissed. A conviction dismissed under former RCW 9.95.240 remains a "conviction" under the SRA. But the conviction is excluded from Carrier's criminal history because dismissing a conviction pursuant to former RCW 9.95.240 has the same effect as vacating a conviction under the SRA. The 2003 amendment to former RCW 9.95.240 cannot change this result. The amendment retroactively affects Carrier's vested right in the vacated status of his conviction and, therefore, may not be applied to him.

¶61 The "subsequent prosecution" exception in former RCW 9.95.240 does not authorize using dismissed or va-

cated convictions as criminal history. Because the POAA is predicated on criminal history, a dismissed or vacated conviction may not count as a strike under the POAA. Carrier's 1981 conviction was therefore wrongly included in his criminal history as a strike under the POAA.

¶62 Carrier is entitled to relief on his personal restraint petition. We remand for resentencing with direction to exclude Carrier's 1981 indecent liberties conviction from his criminal history.

C. JOHNSON, CHAMBERS, OWENS, and FAIRHURST, JJ., and ALEXANDER, J. PRO TEM., concur.

¶63 MADSEN, C.J. (concurring in the dissent) — I agree with the dissent's analysis that former RCW 9.95.240 (2003) applies prospectively. The 1981 indecent liberties conviction was properly included in Harry Carrier's criminal history because until he committed a new offense, the precipitating event for application of former RCW 9.95.240 did not occur. Because he did not commit a new offense until 2004, his criminal history was properly determined by applying the 2003 amendment to the statute.

¶64 I disagree with one aspect of the dissent, however, and that is in regard to the propriety of determining the facial validity of Carrier's judgment and sentence under *In re Personal Restraint of Coats*, 173 Wn.2d 123, 267 P.3d 324 (2011). Dissent at 820 (citing majority at 799-800). I continue to believe that we have misapplied RCW 10.73.090(1) and would not consider the order dismissing Carrier's 1981 conviction.[12] However, even assuming that the 1981 dismissal order is a proper document to consider under the

---

[12] I also have reservations about the majority's application of *Coats* because the order dismissing the 1981 conviction is not related to the current case, i.e., it is not a document pertaining to the current offense, such as the charging document or a verdict form that the majority in *Coats* said that the court can consider in determining facial validity. Considering the order from 1981 goes far beyond the majority decision in *Coats*.

majority in *Coats*, it is proper to take judicial notice of relevant statutes when considering the validity on its face of a judgment and sentence, as I explained in my concurrence in *Coats*, 173 Wn.2d at 159 (Madsen, C.J., concurring). Here, if former RCW 9.95.240 applies prospectively in the manner that the dissent correctly identifies, which is a matter of interpreting the statute, then the judgment and sentence could not be invalid on the ground claimed. Accordingly, in connection with the claim that the judgment and sentence is invalid on its face, it is proper in this case to interpret the meaning of the statute and determine whether it applies prospectively.

¶65 WIGGINS, J. (dissenting) — Petitioner Harry Carrier's judgment and sentence is not facially invalid because the trial court properly included his 1981 indecent liberties conviction in his criminal history under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. The legislature has said that a pre-SRA determination of guilt by trial or guilty plea is considered a conviction unless it is vacated. Former RCW 9.94A.030(13)(b) (2004). Carrier's suspended sentence remains a conviction because it has never been vacated. Moreover, it cannot be vacated under the SRA because it is a crime against persons. Former RCW 9.94A.640 (1987); former RCW 43.43.830(5) (2004). I would affirm Carrier's sentence of life imprisonment without the possibility of parole because Carrier committed two sex offenses that qualify him as a persistent offender under former RCW 9.94A.030(32)(b)(i)-(ii) (2004). Accordingly, I respectfully dissent.

## ANALYSIS

¶66 I begin by noting my agreement with much of the majority's opinion. I agree that we should consider Carrier's 1985 dismissal order in determining whether Carrier's sentence is valid on its face. *See* majority at 799-800. Because

Carrier's 1981 dismissed conviction "has a direct bearing on the trial court's authority to impose a life sentence," *id.* at 800, I believe it is appropriate for us to consider the facial validity of Carrier's judgment and sentence despite the ordinary one-year time bar imposed by RCW 10.73.090. I also agree that a pre-SRA dismissal of a deferred sentence remains a "conviction" under the SRA at least for some purposes. *See id.* at 801-03. As the majority demonstrates, our cases, legislative history, and the text of former RCW 9.95.240 (2003) support the conclusion that Carrier's dismissed pre-SRA conviction remains a conviction under the SRA. *Id.* at 803.

¶67 I am in agreement with the majority's discussion of former RCW 9.95.240 that acknowledges the legislature's intent to require a person convicted before the SRA to move to vacate the conviction under former RCW 9.94A.640 in order to remove the dismissed conviction from the convict's criminal history. *See id.* at 808, 809. In addition, I agree that Carrier could not have obtained a vacation had he applied for one because his 1981 indecent liberties conviction qualifies as a "crime against persons" under former RCW 9.94A.640 and former RCW 43.43.830(5). *See id.* at 807-08. Finally, I agree with the majority that in order to determine Carrier's 2004 sentence for first degree child molestation, dealing in depictions of a minor engaged in sexually explicit conduct, and possession of depictions of a minor engaged in sexually explicit conduct, we look to the law in effect when he committed the offenses and that, as a general proposition, the law applies retroactively if the precipitating event under RCW 9.95.240 occurred before the date of its enactment. *See id.* at 809-10.

¶68 I part company from the majority on the narrow question of what qualifies as the precipitating event under RCW 9.95.240. Because I believe that the precipitating event under the statute is Carrier's commission of a new offense, which occurred after the legislature amended RCW 9.95.240 in 2003, I would hold that RCW 9.95.240 applies

prospectively. The prospective construction of RCW 9.95.240 compels the conclusion that the trial court properly included Carrier's 1981 indecent liberties conviction in Carrier's criminal history and offender score.

¶69 The legislature, not the court, determines crimes and punishments. *State v. Varga*, 151 Wn.2d 179, 193, 86 P.3d 139 (2004) (" 'Determination of crimes and punishment has traditionally been a legislative prerogative, subject to only very limited review in the courts.' " (quoting *State v. Bryan*, 93 Wn.2d 177, 181, 606 P.2d 1228 (1980))). Indeed, the legislature's power to establish what qualifies as crime and to fix the penalties and punishments for crime is " ' "plenary and subject only to constitutional provisions." ' " *Id.* (quoting *State v. Thorne*, 129 Wn.2d 736, 767, 921 P.2d 514 (1996) (internal quotation marks omitted) (quoting *State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360 (1937))).

¶70 To determine whether a statute applies prospectively or retrospectively, we look to the subject matter of the statute and the event that triggers its application. *In re Estate of Burns*, 131 Wn.2d 104, 112, 928 P.2d 1094 (1997). "A statute operates prospectively when the precipitating event for operation of the statute occurs after enactment." *Id.* at 110. A statute is retroactive "if the 'triggering event' for its application happened before the effective date of the statute." *State v. Pillatos*, 159 Wn.2d 459, 471, 150 P.3d 1130 (2007) (quoting *State v. Belgarde*, 119 Wn.2d 711, 722, 837 P.2d 599 (1992)). We "presume that statutes operate prospectively unless contrary legislative intent is express or implied." *Burns*, 131 Wn.2d at 110. "A statute is not retroactive merely because it applies to conduct that predated its effective date," *Pillatos*, 159 Wn.2d at 471, or " 'because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law.' " *Id.* (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269-70, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994)). Neither is a statute retroactive " 'merely because it relates to prior facts or transactions where it does not change their

legal effect. It is not retroactive because some of the requisites for its actions are drawn from a time antecedent to its passage or because it fixes the status of a person for the purposes of its operation.'" *Varga*, 151 Wn.2d at 195 (quoting *State v. Scheffel*, 82 Wn.2d 872, 879, 514 P.2d 1052 (1973)).

¶71 With these principles in mind, I conclude that RCW 9.95.240 applies prospectively. When the legislature amended RCW 9.95.240 in 2003, it did so to place pre-SRA and post-SRA convicts on the same footing with regard to vacating their convictions. *See* H.B. REP. on Substitute H.B. 1346, at 4, 58th Leg., Reg. Sess. (Wash. 2003) (the "application for and granting of the vacation [for pre-SRA felons] are subject to the same conditions and restrictions as apply to SRA felony convictions"). This amendment expresses the legislative intent that any convicted person, whether sentenced before or after the enactment of the SRA, must apply for a vacation to exclude any prior conviction from his or her criminal history. If a court has not vacated a conviction, then the conviction remains in the criminal history, to be considered in any subsequent sentencing. The subject matter of RCW 9.95.240, then, is the inclusion or exclusion of previous convictions in criminal history depending on whether the previous conviction has been vacated. Therefore, the precipitating event under the statute here is Carrier's commission of child molestation in 2004. If Carrier had not pleaded guilty to child molestation and lesser offenses in 2004, the court would not have needed to know his criminal history to calculate an offender score and RCW 9.95.240 would not have come into play. Because the precipitating event under RCW 9.95.240 is Carrier's commission of a new offense, RCW 9.95.240 can only be construed to operate prospectively: Carrier molested a child in 2004, *after* the legislature amended RCW 9.95.240 in 2003.

¶72 This prospective construction is compelled by our precedents. In *State v. Scheffel*, we considered whether chapter 46.65 RCW, the Washington Habitual Traffic Of-

fenders Act of 1971, applied prospectively or retroactively. 82 Wn.2d at 878. The statute permitted automatic revocation of driver licenses where drivers received three or more serious traffic offenses within a five-year period. *Id.* at 874-75. When chapter 46.65 RCW went into effect, Scheffel had already committed two serious traffic offenses. *Id.* at 874. Shortly after the statute went into effect, Scheffel committed a third serious offense and the State sought to classify him as a habitual offender, thereby revoking his driver license. *Id.* at 874-75. Scheffel argued that the statute applied to him retroactively because it imposed a new penalty and constituted an increase of a previously imposed punishment. *Id.* at 878. We disagreed, holding, "The act does not impose any new duty, and it does not attach any disability on [the defendant] in respect to transactions. [Scheffel] could have avoided the impact of the act by restraining [himself] from breaking the law of this state." *Id.* at 878-79. The fact that two of Scheffel's convictions occurred prior to the enactment of chapter 46.65 RCW had no bearing on our retroactivity analysis because the statute did not alter the consequences of Scheffel's traffic offenses before enactment but served only to increase the penalties for the traffic offense he committed after the new law went into effect.

¶73 Similarly, in *Varga*, we considered the legislature's 2002 amendments to the SRA that required the trial courts to include the defendants' previously "washed out" convictions in their offender scores. 151 Wn.2d at 183-84, 191. Over Varga's arguments that the inclusion of washed out convictions constituted a retroactive application of the SRA amendments, we held that "[t]he 2002 SRA amendments serve only to enhance the penalty for Varga's crime that he committed after the amendments' effective date." *Id.* at 196. We noted that the precipitating event under the SRA amendments was the commission of a new offense. *Id.* at 197. We stressed that statutes are not deemed retroactive " 'merely because [they] upset[ ] expectations based in prior

law.' " *Id.* at 196-97 (quoting *Landgraf*, 511 U.S. at 269). Just as in *Scheffel*, 82 Wn.2d 872, we stated that "Varga could have avoided the effect of the 2002 SRA amendments by not committing a subsequent crime." *Varga*, 151 Wn.2d at 197.

¶74 The majority discusses *Varga* but curiously asserts that our analysis in *State v. T.K.*, 139 Wn.2d 320, 987 P.2d 63 (1999), is more apt. Majority at 812. In *T.K.*, we held that T.K. had a vested right in sealing his juvenile records because he met the statutory requirements for sealing the records before the legislature changed those requirements. 139 Wn.2d at 334-35. We indicated that the legislature's enactment of stricter conditions for sealing applied retroactively, depriving T.K. of his right to have his records sealed. *Id.* The majority holds that, like T.K., "Carrier met all the conditions for vacating his conviction under the preamendment version of former RCW 9.95.240." Majority at 812.

¶75 I respectfully disagree. As an initial matter, the rights that we considered in *T.K.* involved the sealing of juvenile records and were not at all related to the inclusion of *T.K.*'s juvenile criminal history in sentencing for a subsequent offense. This ground alone distinguishes *T.K.* from our analysis here. Moreover, the legislative amendments at issue here do not "resemble" *T.K.* at all, *id.*, but are nearly identical to the legislative amendments considered in *Varga*. Like Varga, Carrier could not rely on the exclusion of his previous conviction from his offender score until he reoffended. *See Varga*, 151 Wn.2d at 197. When Carrier reoffended, the legislature had already addressed Carrier's situation and indicated that previous convictions would serve to augment penalties for future offenses. Therefore, as in *Varga*, Carrier "could not exercise his alleged 'right' to [exclude his conviction from his criminal history] until he committed a new offense." *Id.*

¶76 As we indicated in both *Varga*, 151 Wn.2d 179, and *Scheffel*, 82 Wn.2d 872, legislative amendments that alter the penalties for crimes committed after enactment are

prospective in their application. The amendments at issue here did not alter the consequences of Carrier's previously dismissed conviction. Rather, they determined only how the previously dismissed conviction would be used in sentencing for any subsequent conviction. Accordingly, the 2003 SRA amendments here apply prospectively to Carrier and, contrary to the majority's holding, require Carrier's 1981 indecent liberties conviction to be included in his criminal history for the calculation of his offender score.[13]

¶77 The majority criticizes my reliance on *Varga*, attempting unsuccessfully to distinguish this case from *Varga*: "The 2003 amendment changes the legal effect of convictions that were effectively vacated prior to its passage. This is quite different from the situation in *Varga*." Majority at 812 n.10. But a conviction dismissed under former RCW 9.95.240 was not "effectively vacated," as the majority asserts. A conviction is "effectively vacated" for purposes of Carrier's case only if it could no longer be used during a later prosecution. But former RCW 9.95.240 provided just the opposite: "in any subsequent prosecution, for any other offense, such prior conviction may be pleaded and proved, and shall have the same effect as if probation had not been granted, or the information or indictment dismissed." LAWS OF 1957, ch. 227, § 7. Carrier's 2004 prosecution is clearly a "subsequent prosecution[ ] for any other offense . . . ." *Id.* at 813. Under former RCW 9.95.240, the prior dismissal of Carrier's 1981 conviction has "the same effect as if probation had not been granted, or the information or indictment dismissed." LAWS OF 1957, ch. 227, § 7.

¶78 The majority acknowledges that we have previously explained that " '[t]he Legislature intended to prohibit all adverse consequences of a dismissed conviction, with the one exception of use in a subsequent criminal conviction but with no additional implied exceptions.' " Majority at 805

---

[13] Because I would resolve this case based solely on the statute's prospective application, I do not address the effect of a change to the SRA that might be considered retroactive.

(quoting *State v. Breazeale*, 144 Wn.2d 829, 837-38, 31 P.3d 1155 (2001)). The majority then "take[s] this opportunity to clarify the holding in *Breazeale*," reaching the opposite conclusion that Carrier's 1981 conviction cannot be used in this subsequent prosecution. Majority at 806. I conclude that we correctly interpreted the statute in *Breazeale*, 144 Wn.2d 829, and that there was no need to "clarify" *Breazeale*.

¶79 The majority has actually blended the two former statutes, RCW 9.95.240 and 9.94A.640, into a hybrid to accomplish a result that could not have been achieved under either statute separately. Under former RCW 9.95.240, Carrier's 1981 conviction could have been used in a subsequent prosecution and could therefore have been used in this case. Under former RCW 9.94A.640(2), Carrier cannot vacate his 1981 conviction because "crimes against persons" cannot be vacated. But the majority combines the two statutes together to permit a result not allowed under either separately.

CONCLUSION

¶80 Our cases and the apparent legislative intent of the 2003 SRA amendments require us to conclude that RCW 9.95.240 applies prospectively to defendants in Carrier's position. Because RCW 9.95.240 applies prospectively, we cannot consider Carrier's 1981 indecent liberties conviction vacated. Carrier's nonvacated conviction was therefore properly included in his criminal history at sentencing for his 2004 child molestation conviction. The sentencing court did not exceed its authority in imposing Carrier's life sentence under the Persistent Offender Accountability Act, former RCW 9.94A.030(32)(b)(i)-(ii), and therefore Carrier's judgment and sentence cannot be considered facially invalid. Carrier's petition must be denied.

¶81 I do not reach this conclusion lightly. Carrier's life sentence seems an unduly harsh punishment for the of-

fenses to which he pleaded guilty: first degree child molestation, dealing in depictions of a minor engaged in sexually explicit conduct, and possession of such depictions would have carried a sentencing range of 51 to 68 months in 2004 if Carrier had had no criminal history and the sentences were imposed concurrently. *See* former RCW 9.94A.510 (2004). His sentence was elevated to life without the possibility of parole because of a conviction 23 years earlier for indecent liberties, for which he was given a suspended sentence and probation, and which was dismissed in 1985 after he successfully completed probation. But however harsh the sentence may seem to me, the legislature has established the sentencing scheme, and we are bound by the intent of the legislature as expressed in these statutes.

¶82 Accordingly, I dissent.

J.M. JOHNSON, J., concurs with WIGGINS, J.