[No. 23984-8-I.   Division One.   February 4, 1991.]

THE CITY OF BELLEVUE, *Petitioner,* v. JEFFREY A. OHLSON, *Respondent.*

*Richard L. Andrews, City Attorney,* and *Susan R. Irwin* and *Lori Molander, Assistants,* for petitioner.

*Douglas L. Cowan* and *Cowan, Hayne & Fox,* for respondent.

GROSSE, C.J.—Jeffrey A. Ohlson was charged in Bellevue District Court with driving while under the influence of intoxicants (DWI). The District Court suppressed the results of a breath test and dismissed the charges after finding Ohlson was denied access to counsel. The King County Superior Court reversed the District Court on the suppression issue, but affirmed the dismissal of charges because the City of Bellevue (City) did not provide Ohlson actual contact with a public defender. The City appeals the dismissal of the DWI charge on this basis. Ohlson cross–appeals alleging the Superior Court erred in reversing the District Court's decision to suppress the results of the breath test. We affirm the Superior Court on the suppression issue, but reverse on the access to counsel issue.

## ACCESS TO COUNSEL

At the pretrial hearing in District Court, Officer Gasperetti testified that he arrested Ohlson for DWI on April 25, 1988, at 7:15 p.m. The officer advised Ohlson of his constitutional rights and transported him to the Bellevue Police Department. After Officer Gasperetti advised Ohlson pursuant to RCW 46.20.308, the implied consent statute, Ohlson inquired as to whether he should take the breath test. When Officer Gasperetti replied that he could not give legal advice, Ohlson stated he wanted to talk to his attorney. In response, Officer Gasperetti used the telephone book to locate the telephone number of Ohlson's attorney and attempted to reach him. Officer Gasperetti made six attempts to reach Ohlson's attorney but was unable to do so because the line was continuously busy for at least 20 minutes. Since Ohlson still wanted to talk to an attorney,

Officer Gasperetti called three different public defenders, but was unable to contact any of them. He reached the answering machines of two attorneys and no one answered the telephone for the third. When the officer offered Ohlson an opportunity to contact another attorney, Ohlson stated he did not know any other attorneys. Ohlson then consented to take the breath test without advice of counsel.

It is apparent from the decision of the District Court that it dismissed the case based on its interpretation of *State v. Fitzsimmons*, 93 Wn.2d 436, 610 P.2d 893, 18 A.L.R.4th 690, *vacated and remanded*, 449 U.S. 977, *aff'd on remand*, 94 Wn.2d 858, 620 P.2d 999 (1980),[1] that actual access to counsel is required. The court found that Officer Gasperetti acted reasonably in his attempts to put Ohlson in contact with private counsel and with a public defender. The court also stated that the inability of the arresting officer to reach a public defender resulted from a breach of the public defender agency's contract with the City and therefore worked to the detriment of Ohlson. The Superior Court affirmed the dismissal based on the same interpretation of *Fitzsimmons*.

CrRLJ 3.1(c) provides:

> (1) When a person has been arrested he or she shall as soon as practicable be advised of the right to a lawyer. . . .
> (2) At the earliest opportunity a person in custody who desires a lawyer shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning a lawyer, and any other means necessary to place him or her in communication with a lawyer.

The City argues that Officer Gasperetti did everything possible to comply with the rule, including providing Ohlson access to the telephone and to the public defender.[2]

---

[1]After the United States Supreme Court vacated the *Fitzsimmons* decision the Washington State Supreme Court held that state court rules provided an independent state basis for its decision and reaffirmed it without alteration.

[2]Although Ohlson argues that the police did not comply with CrRLJ 3.1 because the police officer made all of the telephone calls and he was not given a telephone book, the District Court concluded specifically that the police did everything they could to assist Ohlson. This finding is supported by substantial

■ To determine whether Ohlson was denied access to counsel under this rule, an appellate court must review the facts and circumstances of each case. *Tacoma v. Myhre,* 32 Wn. App. 661, 648 P.2d 912 (1982). In dismissing the charge against Ohlson the trial court relied on *Fitzsimmons* wherein the Washington Supreme Court held that a criminal defendant in a DWI case has the right to access to counsel prior to taking a breath test. *Fitzsimmons,* 93 Wn.2d at 441. In that case a police officer stopped, arrested, and charged the defendant with DWI after the defendant failed sobriety tests. After the defendant was read his *Miranda* rights and requested an appointed attorney, the officer told him he would not be appointed counsel that evening and that he would have to wait until arraignment when the court would appoint counsel. The Supreme Court held that the defendant was illegally denied access to counsel and concluded that dismissal of the charge was the appropriate remedy.

It is evident from *Fitzsimmons* that a defendant has no right to have an attorney *physically* present when he takes the breath test. *Fitzsimmons,* 93 Wn.2d at 447. The court stated:

> Often telephone consultation alone at the stage in the proceedings considered here *will* provide the defendant with adequate legal assistance to assure his basic rights to fair trial. The State must merely insure that the defendant can immediately contact counsel who can help him make the decision as to how his defense will be structured, and whether that defense requires the attorney's physical presence at the scene of the charging.

*Fitzsimmons,* 93 Wn.2d at 448. In discussing whether the requirement of access to counsel for indigent defendants will be burdensome to the police, the court noted that as a practical matter 24-hour access to appointed counsel by telephone is available in some areas of the state. *Fitzsimmons,* 93 Wn.2d at 446. It is apparent that the District

---

evidence and must be accepted on appeal. RALJ 9. On this record it is apparent that there was nothing more that could reasonably have been accomplished by way of contacting counsel absent a requirement that actual access is required, which is the very question at issue.

Court and Superior Court relied on this language to reach the conclusion that actual telephone contact with an attorney was required under the court rule.

■ We do not believe that *Fitzsimmons* or CrRLJ 3.1 requires actual contact. *State v. Staeheli,* 102 Wn.2d 305, 310, 685 P.2d 591 (1984) supports our position. In that challenge to a revocation of a driver's license pursuant to RCW 46.20.308, the implied consent law, the *Staeheli* court stated:

> For the purposes of the Breathalyzer test, an accused's opportunity to contact an attorney must be limited to a reasonable period of time. An extended delay may significantly affect the test results. If an accused has been allowed reasonable access and has made no contact with counsel, but the test can no longer be delayed, the driver must decide on his own whether he will submit to the test.

*Staeheli,* 102 Wn.2d at 310. Although *Staeheli* is not a criminal case, its reasoning is persuasive on the issue before us. The language of CrRLJ 3.1 requires reasonable access to, not actual contact with, an attorney. Under the facts of this case, the police complied with the requirements of the rule and provided Ohlson with reasonable access to counsel. It would be unreasonable to conclude that the rule was violated because no attorney was available.

*Seattle v. Wakenight,* 24 Wn. App. 48, 599 P.2d 5 (1979), a Court of Appeals decision issued prior to *Fitzsimmons,* supports the result we reach here. In that case, Wakenight was arrested for DWI, given his *Miranda* rights, and transported to the police station. During field sobriety tests Wakenight requested an attorney. The officer contacted the public defender's office and was told it handled only serious felony cases and would not respond to Wakenight's request for advice. After the police continued to perform videotaped sobriety tests, Wakenight again requested counsel. When the officers gave him a telephone book, he made several unsuccessful attempts to contact an attorney, including three telephone calls to 911. Wakenight then returned to the officer and was given a breath test. The Court of

Appeals held that Wakenight was not denied access to counsel under CrR 3.1(c)(2).[3] The court observed:

> In the instant case, Wakenight was not an indigent and could afford to retain an attorney. The police officer did not deny Wakenight the assistance of counsel nor did he prevent him from seeking counsel of his own choice, but made every effort to assist him, including contacting the office of the public defender. The officer did everything he was required to do under both the state and federal constitutions and the criminal rules. The law does not require that the police discontinue their investigation because a criminal defendant is unable to contact an attorney.

*Wakenight,* 24 Wn. App. at 51.

The facts here are similar. Ohlson's attorney and three public defenders were called, but Ohlson was unable to contact an attorney to advise him. We must accept the trial court's finding that the officer by his efforts did everything reasonably necessary to assist Ohlson in reaching an attorney. We reaffirm the reasoning in *Wakenight.* When an officer makes every reasonable effort to provide access to counsel, the rule is satisfied even though actual contact is not effected. Here, the officer made every effort to assist Ohlson in full compliance with CrRLJ 3.1. Ohlson was not denied access to counsel.

### SUPPRESSION OF BREATH TEST RESULTS

We next address the cross appeal that challenges the Superior Court's reversal of the District Court's suppression of the breath test results. Ohlson contends that destruction of the simulator solution used to calibrate and test the accuracy of the simulator violated his right to due process.

Sergeant Gullberg of the Washington State Patrol testified at the pretrial hearing on the motion to dismiss/suppress.[4] Sergeant Gullberg was responsible for the implementation of the breath testing program throughout the state of Washington. He testified that the Washington

---

[3]This rule is identical to CrRLJ 3.1(c).

[4]The record contains the stipulated testimony at the July 26, 1988, hearing.

State Toxicology Laboratory mixes a solution of water and alcohol, called the simulator solution, which is then used in the DataMaster, the device used to measure the percentage of blood alcohol. A sample of this solution is tested on a gas chromatograph to meet standards set forth in WAC 448–12–230 and then packaged into jars and sealed by the laboratory. These jars are attached to the Guth Model 34–C External Standard Simulator Solution device on the individual BAC Verifier DataMaster infrared breath test instrument. Sergeant Gullberg testified that the solution must be replaced when it weakens, based on a reading under .090. He testified that it would not be difficult to retain a portion of the solution after it is replaced.

The parties cite two Supreme Court decisions on destruction of evidence. In *California v. Trombetta,* 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528 (1984) the United States Supreme Court held that the failure to preserve material evidence, *i.e.*, a sample of a defendant's breath, did not violate the due process clause of the federal constitution. The Court stated:

> To meet this standard of constitutional materiality, see *United States v. Agurs,* [427 U.S. 97, 109–10, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976)], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Trombetta,* 467 U.S. at 489.

In a more recent case, *Arizona v. Youngblood,* 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333 (1988), the State failed to refrigerate clothing and perform tests on semen samples. The defendant had been informed about the evidence but declined to perform tests on the samples. The Court held that even though the police failed to preserve potentially useful evidence a criminal defendant was not denied due process of law absent a showing of bad faith on the part of the police. Although Ohlson argues this case does not apply, any federal due process claim now requires that a defendant show the police acted in bad faith. The

record before us contains no evidence of bad faith. Thus, the federal due process claim fails.

■ Under the due process clause of the Washington Constitution, the State has a duty to preserve material evidence. *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976). In *Wright,* the Supreme Court reversed a murder conviction because the police failed to preserve physical evidence that was material to the defendant's defense. However, in a subsequent case, the court held that in cases involving destruction of evidence the defendant has the burden of proof to show a reasonable possibility that the missing evidence would have affected his ability to present a defense. *State v. Vaster,* 99 Wn.2d 44, 52, 659 P.2d 528 (1983). If the defendant satisfies this burden of proof, the trial court then balances this reasonable possibility against the State's ability to preserve the evidence. The *Vaster* court observed:

"Reasonableness" must be determined in light of the peculiar circumstance of each case. Lost or destroyed evidence which does not rise to the level of establishing a "reasonable possibility" that it will exculpate a defendant will be deemed insufficiently material to constitute a due process violation.

*Vaster,* 99 Wn.2d at 52.

The City cites *State v. Canaday,* 90 Wn.2d 808, 585 P.2d 1185 (1978) to support its argument. There, the Supreme Court held the State was not required to preserve used Breathalyzer ampuls. The defendants wanted the ampuls preserved so they could be scientifically retested to impeach the original Breathalyzer results. The defendants also wanted the ampuls reserved so they could challenge the credibility of the officer who administered the test. After the Supreme Court determined that expert testimony on the retesting procedure was inadmissible under the *Frye*[5] standard, it held the ampuls were not material evidence and the State had no duty to preserve the evidence. On the issue of whether the used ampuls were required to be preserved to impeach the officer's testimony performing the test, the court determined:

---

[5]*Frye v. United States,* 293 F. 1013, 1014, 34 A.L.R. 145 (D.C. Cir. 1923).

[T]he defendant has adequate opportunity at trial to impeach the credibility of the officer without access to the used ampoule. . . . We conclude that the used Breathalyzer test ampoules are not material evidence in a constitutional sense and nondisclosure of the ampoules caused by routine destruction and disposal is not constitutional error.

*Canaday,* 90 Wn.2d at 816.

By contrast, destruction of used Breathalyzer test ampoules, as noted above, does not interfere with the defendant's ability to determine the facts or raise a defense of nonintoxication. Testimony to be gained from the ampoules is only tangential to the question of innocence or guilt. The ampoules are therefore not material in a constitutional sense.

*Canaday,* 90 Wn.2d at 817. Finally, the court stated that persons arrested and asked to take a breath test are offered the opportunity to obtain an independent test of their blood alcohol content that would "yield test results contemporaneous with those obtained by the State, which could have considerable force in rebutting the State's evidence."[6] *Canaday,* 90 Wn.2d at 818.

Ohlson contends that *Canaday* does not apply to his case for two reasons. First, he asserts that the basis for the decision, the inadmissibility of the retesting of the ampoules, is not present in this case since retesting using chromatography would be admissible under the *Frye* standard. Second, he argues that the use of the simulator solution to calibrate and test the accuracy of the simulator requires preservation of the solution to test the accuracy of the breath machine and makes the evidence material. The State counters that even if the evidence of retesting was admissible Ohlson has failed to show that nondisclosure of the evidence created a reasonable doubt that did not otherwise exist.[7]

---

[6]In *Canaday* the defendants did not obtain an independent test of their blood alcohol content.

[7]The City appears to be applying the stricter standard articulated in *Canaday* rather than the "reasonable possibility" and balancing standard of the later *Vaster* decision.

■ In this case, while the trial court found that the missing evidence could have been used to determine whether the DataMaster or the simulator was functioning accurately, it also concluded that there was no evidence that a retest of the solution would have been helpful to Ohlson's defense. We agree. Ohlson has failed to provide any evidence that the DataMaster or simulator was malfunctioning when it was used to test his breath. As in *Canaday*, Ohlson had the opportunity to obtain and to present the results of an independent test and did not do so.[8] Absent this evidence or other admissible evidence challenging the accuracy of the test results, Ohlson has failed to show a reasonable possibility that the retesting of the solution affected his ability to present a defense.

In a separate argument Ohlson contends that RCW 46.61.506(6) requires reanalysis of the simulator solution. The statute provides:

> Upon the request of the person who shall submit to a test or tests at the request of a law enforcement officer, full information concerning the test or tests shall be made available to him or his attorney.

Ohlson argues that "full information" means he should be given a portion of the simulator solution.

■■ By applying several fundamental principles of statutory interpretation, we conclude that RCW 46.61-.506(6) does not mandate reanalysis of the simulator solution. Words are given the meaning provided by the statute or, in the absence of a specific definition, their ordinary meaning. *State v. Standifer*, 110 Wn.2d 90, 750 P.2d 258 (1988). The dictionary defines "full" and "information" respectively: "containing all that possibly can be placed or put within"; "something received or obtained through informing : as . . . knowledge communicated by others or obtained from investigation, study, or instruction". *Webster's Third New International Dictionary* 918, 1160

---

[8]A defendant has the right to obtain an independent test of his or her blood alcohol content administered by a qualified person of his or her own choosing. RCW 46.20.308(2), RCW 46.61.506(5).

(1986). Based on these definitions the ordinary meaning of "full information" does not include access to the device or materials used to administer the test. Rather "full information" would include the complete details of how the tests are designed and administered. Contrary to Ohlson's contention, there is no indication that the term "full information" in this context would be void, superfluous, or insignificant if it does not mean that the prosecution is required to provide the solution used in the breath test machine. RCW 46.61.506(6) does not require reanalysis of the simulator solution.

In conclusion, we reverse the dismissal of the DWI charge on the issue of access to counsel and affirm the Superior Court's decision that the breath test results should not be suppressed. The case is remanded for trial.

COLEMAN, J., and WINSOR, J. Pro Tem., concur.