# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46016-5-II |
| Respondent, | |
| v. | |
| RICARDO RAMIREZ DIAZ, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — A jury found Ricardo Ramirez Diaz guilty of felony driving under the influence (DUI). Ramirez Diaz appeals, arguing (1) that the State violated his right to remain silent, his right to a fair trial by eliciting improper opinion testimony, and that it committed prosecutorial misconduct, (2) that his trial counsel was ineffective, (3) that the trial court erred by admitting into evidence his breath test refusal and by admitting ER 404(b) evidence about a domestic disturbance, and (4) that cumulative error requires reversal. We hold that although there was constitutional error, it was harmless and we affirm his conviction.

## FACTS

### BACKGROUND

On November 4, 2013, after midnight, Pierce County Sheriff's Deputies Shane Masko and Shane Pecheos responded to a domestic disturbance call on Quiet Water Loop Road near Lake Tapps. Deputy Masko determined that Ramirez Diaz threw a vacuum cleaner through a bathroom

door before leaving the residence. Soon thereafter, Deputy Masko and Deputy Pacheos learned that a vehicle described as driven by Ramirez Diaz was involved in a collision a short distance from the home.

Meanwhile, Lake Tapps resident Gary Allen awoke at approximately 12:30 AM when his power went out. Arriving within two minutes, Allen discovered a heavily damaged vehicle resting against a telephone pole with its emergency lights flashing and its engine still running, but with no occupants. He drove up and down the road looking for the driver of the vehicle and saw no one. His neighbor, Jon Fowler, joined him in the search for a possible driver. They saw no one until moments later Fowler discovered a man, later identified as Ramirez Diaz, crawling up a steep embankment on the side of the road approximately 60 feet from the collision location. Allen and Fowler could tell that Ramirez Diaz was intoxicated. According to Fowler, Ramirez Diaz's clothing was torn, he had small nicks or cuts on his face, and he was missing one of his shoes. Fowler surmised that Ramirez Diaz appeared to be the driver or someone from the car.

Deputy Buddy Mahlum and Deputy Pacheos arrived shortly thereafter. Deputy Mahlum determined that the damaged vehicle was registered to Ramirez Diaz and his significant other, the vehicle was running, the keys were in the ignition, there was a shoe on the driver's side floorboard, and only the driver's side airbag had deployed. Additionally, Ramirez Diaz had blood spatter on his cheek and red marks on his chest consistent with injuries caused by airbags and seatbelts, respectively.

ARREST AND BOOKING

State Patrol Trooper Brett Robertson assisted in the DUI investigation. He took Ramirez Diaz to the blood/breath alcohol concentration room and read Ramirez Diaz his *Miranda*[1] rights, at which point Ramirez Diaz requested a lawyer. After Trooper Robertson inquired several times as to whom Ramirez Diaz wanted to contact, Ramirez Diaz provided Trooper Robertson with the name of an attorney. But Ramirez Diaz did not have his attorney's telephone number. Trooper Robertson suggested that Ramirez Diaz could use a phone book. Trooper Robertson asked Ramirez Diaz whether he would like to contact a public attorney, but Ramirez Diaz was "unwilling." 3 Report of Proceedings (RP) at 369. Trooper Robertson then pointed to the implied consent form and read the implied consent warnings to Ramirez Diaz, who claimed he did not understand them.

According to Trooper Robertson, he attempted to read the implied consent warnings again, but Ramirez Diaz became belligerent, interrupting the officer, continually standing up, then sitting down again, and spitting on the floor. When asked whether Ramirez Diaz would submit to a breath test, Ramirez Diaz responded, "No." 3 RP at 378. As a result of his refusal to submit to the breath test, officers transported Ramirez Diaz to the hospital where medical staff took a blood sample pursuant to a search warrant. The toxicology results established that Ramirez Diaz's blood alcohol concentration was .26.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

PROCEDURE AND TRIAL

The State charged Ramirez Diaz with felony DUI and third degree malicious mischief. Pretrial, the parties stipulated that Ramirez Diaz had a prior qualifying offense sufficient to elevate the DUI from a misdemeanor to a felony DUI. Ramirez Diaz also agreed that his refusal to submit to a breath test was admissible by statute so long as the State laid the proper foundation. And the State admitted that it planned to dismiss the malicious mischief charge and file an amended information charging Ramirez Diaz with only one count of felony DUI. Finally, Ramirez Diaz moved to preclude the State or its witness from referring to Ramirez Diaz as "the driver." 1 RP at 20. The State agreed.

During trial, Deputy Masko testified that Ramirez Diaz was in custody and handcuffed in the patrol car when he arrived at the collision scene. Then the following exchange occurred:

> [THE STATE:]        And when you came into contact with Mr. Ramirez Diaz, were you able to make any observations about the defendant?
> [DEPUTY MASKO:] Yes.  He was very hard to speak to.  I asked him for -- I needed his basic information, his full name and his date of birth for my report, *and he didn't want to talk to me about anything.*
> [THE STATE:]        Let's not get into any of Mr. Ramirez [Diaz]'s statements.  I want to ask you some background questions about the observations.

2 RP at 187 (emphasis added).

A short time later, the State inquired similarly of Deputy Pecheos:

> [THE STATE:]        When you arrived on site at the collision site, what did you observe?
> [DEPUTY PECHEOS:]        A grey Tahoe had collided with a power pole.  Mr. Ramirez [Diaz] was standing outside the vehicle, bloody face.  Seemed a bit disoriented.  Wasn't extremely cooperative with us while we asked him some questions.

2 RP at 213.  Ramirez Diaz did not object during either exchange nor did he move to strike the deputies' nonresponsive answers.

4

Fowler testified that Ramirez Diaz "appeared to me to be the driver or somebody from the car." 2 RP at 272. The State asked Deputy Mahlum whether the blood spatter on Ramirez Diaz's cheek and the marks on his chest were germane based on his training and experience investigating collisions as a veteran police officer. Deputy Mahlum explained that the injuries were relevant because they appeared to be caused by the impact. In addition, Deputy Mahlum testified concerning his conclusions after observing Ramirez Diaz and the collision scene:

> [THE STATE:]      Based off of what you observed with regards to, I guess, the shoe, the air bag, the seat belt, what was your conclusion, based off the information that you had at that time, after taking the pictures, after seeing the whole scene with regards to the collision site of who the driver was?
> [DEPUTY MAHLUM:]      I felt it was Mr. [Ramirez Diaz].

2 RP at 340.

Deputy Pacheos testified that Ramirez Diaz's injuries on his face and shoulder were consistent with Ramirez Diaz sitting on the driver's side of the vehicle and receiving injuries from the airbag and the seatbelt. Trooper Robertson also testified that the blood and swelling on Ramirez Diaz's nose and marks on Ramirez Diaz's left shoulder were likely the result of the airbag deployment and seatbelt injuries consistent with those that would be sustained by someone who had been sitting on the left side of a vehicle during a collision.

After the State rested, the trial court accepted an amended information charging only the felony DUI. The trial court denied Ramirez Diaz's motion to dismiss the case based on insufficient evidence.

In closing, the State explained that its case rested entirely on circumstantial evidence. The prosecution cited many facts that, in its view, proved that Ramirez Diaz was the driver. At no point in closing arguments did the State mention either Ramirez Diaz's apparent unwillingness to

5

speak to the officers or to the fact that Deputy Mahlum opined that Ramirez Diaz was the driver. The jury found Ramirez Diaz guilty of felony DUI. Ramirez Diaz appeals.

ANALYSIS

I. CONSTITUTIONAL VIOLATIONS OF RIGHT TO REMAIN SILENT AND RIGHT TO FAIR TRIAL

A. RIGHT TO REMAIN SILENT

Ramirez Diaz argues that Deputy Masko and Deputy Pecheos made impermissible comments on his post-arrest right to silence and, therefore, these comments violate his constitutional right to be free from self-incrimination.[2] We hold that Deputy Masko's testimony that Ramirez Diaz "didn't want to talk to [him] about anything" was an improper comment on Ramirez Diaz's right to remain silent. 2 RP at 187.

The Fifth Amendment to the United States Constitution states, in part, no person "shall . . . be compelled in any criminal case to be a witness against himself." This provision applies to states through the Fourteenth Amendment. *State v. Burke*, 163 Wn.2d 204, 211, 181 P.3d 1 (2008). The Washington Constitution, article I, section 9 states, "No person shall be compelled in any criminal case to give evidence against himself." We interpret the two provisions equivalently. *State v. Easter*, 130 Wn.2d 228, 235, 922 P.2d 1285 (1996). The right against self-incrimination is

---

[2] Deputy Pecheos testified that Ramirez Diaz "[w]asn't extremely cooperative with us while we asked him some questions." 2 RP at 213. But when read in context, this statement does not constitute even an indirect comment on Ramirez Diaz's right to remain silent. An indirect comment on the right to silence occurs when a witness or state agent references a comment or action by the defendant which could be inferred as an attempt to exercise the right to remain silent. *State v. Pottorff*, 138 Wn. App. 343, 347, 156 P.3d 955 (2007). That Ramirez Diaz "[w]asn't extremely cooperative" does not suggest that he was attempting to invoke his right to silence. 2 RP at 213. Immediately before that statement, Deputy Pecheos said that Ramirez Diaz seemed "a bit disoriented." 2 RP at 213. In context, Deputy Pecheos's statement was not an improper comment on Ramirez Diaz's right to remain silent.

liberally construed. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951).

In Washington, a defendant's constitutional right to silence applies in both pre- and post-arrest situations. *Easter*, 130 Wn.2d at 236, 243. In the post-arrest context, it is well settled that it is a violation of due process for the State to comment upon or otherwise exploit a defendant's exercise of his right to remain silent. *State v. Romero*, 113 Wn. App. 779, 786-87, 54 P.3d 1255 (2002). And it is constitutional error for a police witness to testify that a defendant refused to speak to him or her. *Easter*, 130 Wn.2d at 241; *see also State v. Holmes*, 122 Wn. App. 438, 445, 93 P.3d 212 (2004) (indicating that it is always a constitutional error to state that a defendant refused to speak to an officer when contacted). The State may not use a defendant's constitutionally permitted silence as substantive evidence of guilt. *State v. Lewis*, 130 Wn.2d 700, 705, 927 P.2d 235 (1996). Thus, "'[a] police witness may not comment on the silence of the defendant so as to infer guilt from a refusal to answer questions.'" *Romero*, 113 Wn. App. at 787 (alteration in original) (quoting *Lewis*, 130 Wn.2d at 705).

Ramirez Diaz cites *Romero* to support the proposition that the comments at issue here constitute direct comments designed to draw negative inferences towards Ramirez Diaz's right to silence. But we need not consider whether *Romero* is analogous to Ramirez Diaz's case because Deputy Masko's comment suggested that Ramirez Diaz refused to speak to police. Deputy Masko testified unequivocally that "[Ramirez Diaz] didn't want to talk to me about anything." 2 RP at 187.

Because Deputy Masko made an improper comment or reference to Ramirez Diaz's silence, this court must examine whether the error was harmless. And it is constitutional error for

a police witness to testify that a defendant refused to speak to him or her. *Romero*, 113 Wn. App. at 790. This testimony violated Ramirez Diaz's right to remain silent. Accordingly, we apply the constitutional harmless error standard below.

## B. RIGHT TO A FAIR TRIAL

Ramirez Diaz argues that Fowler's and Deputy Mahlum's testimony suggesting that Ramirez Diaz was the driver constituted an impermissible opinion on guilt in violation of his constitutional rights to a fair trial by jury.[3] We assume without deciding that this testimony constituted an impermissible opinion on guilt.[4]

"'Generally, no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant; such testimony is unfairly prejudicial to the defendant because it invad[es] the exclusive province of the [jury].'" *State v. King*, 167 Wn.2d 324, 331, 219 P.3d 642 (2009) (internal quotation marks omitted) (alterations in original) (quoting *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001)). Thus, neither a lay nor an expert witness "'may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference.'" *King*, 167 Wn.2d at 331 (quoting *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987)). Admitting impermissible opinion testimony regarding the defendant's guilt may be reversible error because

---

[3] Although he did not object to Deputy Mahlum's statement at trial, Ramirez Diaz may nevertheless raise this issue for the first time on appeal as "manifest error" because the statement was an explicit witness statement on an ultimate issue of fact. *State v. Kirkman*, 159 Wn.2d 918, 936, 155 P.3d 125 (2007).

[4] Ramirez Diaz also appears to argue that the State committed prosecutorial misconduct by referring to the improper opinion in closing argument. But he fails to develop his argument in any meaningful way. Accordingly, we decline to consider this issue on the merits pursuant to RAP 10.3(a)(6).

it violates a defendant's constitutional right to a jury trial, including the independent determination of the facts by the jury. *Demery*, 144 Wn.2d at 759.

Thus, witnesses may not offer opinions on the defendant's guilt, either directly or by inference. *King*, 167 Wn.2d at 331 (quoting *Black*, 109 Wn.2d at 348). Whether testimony constitutes an impermissible opinion on guilt or a permissible opinion embracing an "ultimate issue" will generally depend on the specific circumstances of each case, including the type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact. *City of Seattle v. Heatley*, 70 Wn. App. 573, 579, 854 P.2d 658 (1993). And constitutional error, if any, is harmless if the State establishes beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error. *See State v. Quaale*, 182 Wn.2d 191, 202, 340 P.3d 213 (2014) (discussing constitutional harmless error as applied to improper opinions on guilt).

Here, Deputy Mahlum testified that he "felt," based on his observations at the scene and on his training and expertise, that Ramirez Diaz was the driver.[5] Deputy Mahlum's conclusion embraced an "ultimate issue" because the only element of the crime in dispute was whether Ramirez Diaz was the driver. *See Quaale*, 182 Wn.2d at 200. And it is possible that the jury gave special consideration to Deputy Mahlum's conclusion because a police officer's testimony "often carries a special aura of reliability" as witnesses. *Demery*, 144 Wn.2d at 765. While this "aura of reliability" did not accompany Fowler's testimony in the same way it did Deputy Mahlum's,

---

[5] Our Supreme Court has voiced particular concern when explicit expressions of personal belief such as "'I felt very strongly that'" and "'we believe'" were used. *State v. Montgomery*, 163 Wn.2d 577, 594, 183 P.3d 267 (2008).

the law also prohibits even a lay witness from testifying to his opinion as to the guilt of the defendant whether by direct statement or inference. *King*, 167 Wn.2d at 331.

Accordingly, it is at least arguable that Deputy Mahlum's testimony that Ramirez Diaz was the driver and Fowler's statement that Ramirez Diaz appeared to be the driver or someone from the car constituted impermissible opinions on guilt. We therefore assume, but do not decide, that they were, and we proceed to analyze whether the alleged error was harmless beyond a reasonable doubt.

### III.  CONSTITUTIONAL HARMLESS ERROR

Ramirez Diaz asserts further that any error cannot be considered harmless under the constitutional harmless error standard. We again disagree.

"The State bears the burden of showing a constitutional error was harmless." *Easter*, 130 Wn.2d at 242. An appellate court will find a constitutional error harmless if it is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt. *Easter*, 130 Wn.2d at 242. And where error is not harmless, a defendant must have a new trial. *Easter*, 130 Wn.2d at 242.

Ramirez Diaz had a motive to quickly leave the Quiet Water Loop address because he knew police were coming. The collision happened within a mile or two from the Quiet Water Loop address. Within two minutes of the collision, Allen was on the scene and saw no one present. Allen drove up and down the road looking for the driver of the vehicle and found no one. Fowler found Ramirez Diaz extremely intoxicated down a very steep embankment approximately 60 feet from the collision scene minutes after the accident occurred.

10

When Ramirez Diaz was found, he was missing a shoe that matched a shoe found on the floorboard of the driver's side of the vehicle. Ramirez Diaz and his significant other were the registered owners of the vehicle and Ramirez Diaz's significant other was at the Quiet Water Loop address. Deputy Pecheos and Trooper Robertson both properly testified based on their training and experience that the airbag and seatbelt injuries were consistent with injuries Ramirez Diaz would have sustained as the driver. Only the driver's side airbag had deployed and there was testimony that the passenger side airbag would have also deployed in that kind of vehicle had someone been positioned in that seat.

Ramirez Diaz contends that the alleged errors were not harmless because no one saw him driving. But this argument ignores the long-standing legal principle that a criminal conviction may rest solely on circumstantial evidence and that circumstantial evidence is equally reliable as direct evidence for that purpose. *State v. Liden*, 138 Wn. App. 110, 118-19, 156 P.3d 259 (2007). Eye witness testimony is simply not required. Circumstantial evidence can therefore constitute overwhelming evidence sufficient to satisfy the constitutional harmless error standard that we apply here.

Ramirez Diaz also argues that his injuries could have been caused by the bushes and brush he walked through and that officers admitted that a passenger could have also climbed out the driver's side window. Although it is conceivably possible that the Ramirez Diaz's injuries could have been caused by the surrounding vegetation, there was no evidence that anyone else was at the scene of the accident moments after the accident and two officers testified that Ramirez Diaz's injuries were consistent with him driving the car based on the driver's seat airbag deployment and left side seatbelt injury. Ramirez Diaz cites only his trial attorney's closing argument based on a

photo to support the claim that the seatbelt injury established that he was the passenger. Finally, Ramirez Diaz's theory was that he could have been riding in the passenger seat and exited the vehicle through the driver's side because that was the only door that was not blocked. According to Ramirez Diaz, this would explain his shoe being found in the front driver's seat. But again there is nothing in the record to suggest anyone other than Ramirez Diaz was in the vehicle.

Importantly, the State did not rely in closing argument on Mahlum's testimony that he felt Ramirez Diaz was the driver. Instead, the State relied on all the circumstantial evidence that pointed to Ramirez Diaz as the driver. Accordingly, we conclude, based on the totality of the circumstances, that these facts constituted overwhelming evidence of Ramirez Diaz's guilt such that the State has established that any reasonable jury would have convicted him of the crime beyond a reasonable doubt even had there been no improper comment on Ramirez Diaz's right to remain silent and no comment that could be construed as an impermissible opinion on his guilt. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

IV. ER 404(b) PROPENSITY EVIDENCE OF THE DOMESTIC DISTURBANCE

Ramirez Diaz next contends that the trial court erred by admitting improper propensity evidence when the State elicited testimony concerning the domestic disturbance call at the Quiet Water Loop address. Because Ramirez Diaz failed to object to this evidence at trial, we hold that Ramirez Diaz has failed to preserve this issue for our review.

Generally, evidence of a defendant's prior misconduct is inadmissible to demonstrate the accused's propensity to commit the crime charged. ER 404(b);[6] *State v. Fisher*, 165 Wn.2d 727, 744, 202 P.3d 937 (2009). Here, Ramirez Diaz claims that the State elicited prejudicial testimony regarding his alleged participation in the initial domestic disturbance for which police were called on the night of the incident.

But Ramirez Diaz did not object to this testimony at trial nor did he move in limine to exclude any reference to the domestic disturbance report. With certain exceptions, we generally do not consider issues raised for the first time on appeal absent manifest error of a constitutional magnitude. RAP 2.5(a). And our Supreme Court has specifically held that "'[e]videntiary errors under ER 404 are not of constitutional magnitude.'" *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (alteration in original) (quoting *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984)). For this reason, we hold that Ramirez Diaz has failed to preserve his ER 404(b) challenge for appellate review.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Ramirez Diaz contends that he received ineffective assistance of counsel in two ways. He argues that his trial counsel was ineffective for failing to object to the improper opinion testimony that he was the vehicle's driver and by failing to object to the ER 404(b) domestic disturbance evidence. We disagree with his argument regarding improper opinion testimony. We agree that

---

[6] ER 404(b) provides,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

counsel's failure to move to exclude evidence regarding the alleged domestic disturbance was objectively deficient performance, but we find no prejudice.

To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice; failure to show either prong defeats this claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). We review an ineffective assistance claim de novo, beginning with a strong presumption that trial counsel's performance was adequate and reasonable and giving exceptional deference when evaluating counsel's strategic decisions. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (citing *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Thus, to establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *McNeal*, 145 Wn.2d at 362. To establish prejudice, a defendant must show that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Given the deference we afford defense counsel's decisions in the course of representation, the threshold for deficient performance is high. *Grier*, 171 Wn.2d at 33. There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions by exercising reasonable professional judgment. *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991). Thus, "[w]hen counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. Conversely, a criminal defendant can rebut the presumption of reasonable performance by demonstrating that "there is no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

A. IMPROPER OPINION TESTIMONY

First, Ramirez Diaz asserts that his trial counsel should have objected to the State's questioning which elicited the improper opinion testimony that Ramirez Diaz was the vehicle's driver, claiming that counsel's performance was objectively deficient for failing to do so. Ramirez Diaz can rebut the presumption that counsel performed reasonably by demonstrating that there is no conceivable legitimate tactic to explain his performance. *Reichenbach*, 153 Wn.2d at 130. Ramirez Diaz cannot do so here. Although, as explained above, this testimony may constitute improper opinion, there was nevertheless a legitimate reason not to object to the State's line of questioning.

Ramirez Diaz's trial counsel conceivably may have refused to object because he was concerned that an objection would draw undue attention to the potentially inadmissible evidence he sought to exclude. Our courts have specifically recognized that such a strategy can be described as a legitimate trial tactic. *State v. Gladden*, 116 Wn. App. 561, 568, 66 P.3d 1095 (2003). By not objecting, jurors were less likely to place undue weight on that damaging evidence. The fact that Ramirez Diaz's counsel objected on grounds that the question had been asked and answered when the State later attempted to elicit similar testimony makes this concern more evident. Accordingly, we hold that Ramirez Diaz cannot establish deficient performance and, therefore, his ineffective assistance claim in this regard fails.

B. ER 404(B) DOMESTIC DISTURBANCE EVIDENCE

Second, Ramirez Diaz asserts that his trial attorney was ineffective for failing to either move to exclude the improper ER 404(b) propensity evidence or to object to it at trial. Ramirez Diaz knew from pretrial discussions that the State planned to dismiss the malicious mischief charge

15

referred to at trial as the domestic disturbance call. Accordingly, to the extent that some evidence associated with the domestic disturbance call was irrelevant and prejudicial, counsel's performance was deficient by failing to seek to preclude its admission.

In addition to deficient performance however, Ramirez Diaz must show that he was prejudiced by his attorney's failure to object to irrelevant details of the domestic disturbance call. To establish prejudice, a defendant must show that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. We presume that juries follow instructions. *See State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012).

Regarding the domestic disturbance call, the jury heard that police initially responded to a domestic violence call, that Ramirez Diaz was considered a suspect, and that a vacuum cleaner was thrown through a door, damaging the vacuum and the door. Ramirez Diaz's speculative assertion that these fleeting references caused him prejudice such that the trial's result would have been different is not supported by the record. This is particularly so when the jury was properly instructed and the only contested issue of the felony DUI charge was whether Ramirez Diaz was the driver of the vehicle. Ramirez Diaz cannot show that the outcome of the trial would have been different but for counsel's failure to object to this testimony or to exclude this evidence. We hold that his ineffective assistance of counsel claims fail.

## VI. ADMISSION OF BREATH TEST REFUSAL

Ramirez Diaz next argues that the trial court erred and violated his rights under CrR 3.1 by failing to suppress his breath test refusal when that refusal came after his request for counsel was not honored. We disagree.

16

Washington criminal rules address the procedure the State must follow when a defendant in custody requests a lawyer. CrR 3.1(c)(2) provides,

> At the earliest opportunity a person in custody who desires a lawyer shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning a lawyer, and any other means necessary to place the person in communication with a lawyer.

CrR 3.1(c)(2) serves a different purpose than *Miranda* warnings because "CrR 3.1(c)(2) is designed 'to provide a meaningful opportunity to contact a lawyer.'" *State v. Kirkpatrick*, 89 Wn. App. 407, 413, 948 P.2d 882 (1997) (quoting A.B.A. PROJECT ON MINIMUM STANDARDS FOR CRIMINAL JUSTICE, STANDARDS RELATING TO PROVIDING DEFENSE SERVICES, § 7.1 cmt. d at 62 (Approved Draft, 1968)). Our courts have construed the rule to require that when a person in custody requests access to a lawyer, police must make "reasonable efforts" to put the individual in contact with a lawyer. *Kirkpatrick*, 89 Wn. App. at 414 (emphasis omitted). The remedy for violating this rule is suppression of the evidence tainted by the violation. *State v. Pierce*, 169 Wn. App. 533, 537, 280 P.3d 1158 (2012).

Here, Ramirez Diaz requested an attorney after Trooper Robertson read him the *Miranda* warnings, but before the refusal to submit to a breath test. Ramirez Diaz contends that his request was not honored in violation of CrR 3.1(c)(2). But the record belies that claim.

After he invoked his right to counsel, Trooper Robertson inquired several times as to whom Ramirez Diaz wished to contact. Ramirez Diaz either did not have a telephone number available or could not assist Trooper Robertson in locating it. Trooper Robertson then suggested that Ramirez Diaz could use a telephone book and asked whether Ramirez Diaz would like to contact a public defender. Ramirez Diaz was unwilling to do so. Ramirez Diaz then became disruptive,

interrupting the officer, continually standing up then sitting down again, and spitting on the floor. Ramirez Diaz ultimately refused to submit to the breath test.

Both parties cite *City of Bellevue v. Ohlson*, 60 Wn. App. 485, 803 P.2d 1346 (1991). There, the officer administering a breath test attempted to facilitate contact with an attorney on behalf of a defendant who had invoked his right to counsel. *Ohlson*, 60 Wn. App. at 487-88. The officer used the telephone book to locate the defendant's attorney and attempted to call him several times. *Ohlson*, 60 Wn. App. at 487. When he was unable to do so, the officer called three different public defenders whom he was also unable to reach. *Ohlson*, 60 Wn. App. at 488.

Ohlson then consented to a breath test after stating that he did not know any other attorneys. *Ohlson*, 60 Wn. App. at 488. The *Ohlson* court concluded that the officer there had done everything reasonably necessary to assist Ohlson in reaching an attorney. *Ohlson*, 60 Wn. App. at 491; *see also City of Seattle v. Wakenight*, 24 Wn. App. 48, 49-50, 599 P.2d 5 (1979) (officer telephones public defender and gives arrestee telephone book and access to telephone).

Similarly here, Trooper Robertson did everything reasonably necessary under the circumstances to afford Ramirez Diaz the right to contact an attorney. And CrR 3.1(c)(2) does not require officers to actually place the accused in contact with an attorney, it requires only reasonable efforts to do so. *See Pierce*, 169 Wn. App. at 548. Accordingly, we hold that no violation of CrR 3.1(c)(2) occurred and, therefore, the trial court did not err by failing to suppress the evidence of Ramirez Diaz's refusal to submit to the breath test.

VII. CUMULATIVE ERROR

Last, Ramirez Diaz argues that the cumulative error doctrine warrants reversal of his case because each of the alleged errors, taken together, denied him a fair trial even if those errors viewed individually could be considered harmless. This argument fails.

"The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal." *In re Det. of Coe*, 175 Wn.2d 482, 515, 286 P.3d 29 (2012). The doctrine does not apply where the errors are few and have little or no effect on the outcome of the trial. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

Here, we hold that there were up to three errors committed at trial: improper comment on Ramirez Diaz's right to remain silent, improper opinion testimony that Ramirez Diaz was the driver, and ineffective assistance of counsel for failing to object to ER 404(b) propensity evidence. But these errors had little to no effect on the outcome of the trial because only the "driving" element of the felony DUI charge was in dispute and the State presented overwhelming circumstantial evidence that Ramirez Diaz was the driver. Accordingly, we hold that the cumulative error doctrine does not warrant reversal because the errors here were few and had little to no effect on the outcome of the trial.

No. 46016-5-II

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MELNICK, J.