[No. 6954-1-III. Division Three. June 19, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIE L. WADE, *Appellant.*

*Irene A. Cleavenger,* for appellant (appointed counsel for appeal).

*C. J. Rabideau, Prosecuting Attorney,* and *Philip A. Meyers, Deputy,* for respondent.

GREEN, C.J.—Willie L. Wade was convicted of two counts of first degree robbery while armed with a deadly weapon. He appeals contending the court erred in: (1) admitting statements he made to a police officer after he had initiated

contact with the officer and executed a waiver; and (2) using a prior conviction in computing his criminal history and sentence. We affirm.

On December 1, 1984, the Taco Spot in Pasco was robbed by a man wearing dark coveralls and a black–veiled mask and carrying a silver gun. Two employees of Taco Spot witnessed the robbery.

About 5:45 p.m. on December 3, the Pump and Pak store in Pasco was robbed by a person wearing dark coveralls, dark gloves and a black hood which had no opening for the eyes, mouth or nose, and carrying a silver–barreled gun. The store clerk gave the robber money, food stamps and coins. After the robber left the store, the clerk called the police. Mr. Conway, who was in the process of stopping at Pump and Pak, saw someone coming out of the store wearing dark coveralls and a mask over his face. The person lifted his mask and Mr. Conway could see he was black. He observed the person running away and the direction in which he was running. When Mr. Conway entered the store, the clerk told him she had been robbed. He hastened back to his car to follow the person. He observed a car parking behind a restaurant. The car lights were off and when he drove past, he observed the person in the car was black and wore coveralls. He noted the license number of the vehicle and that it was a large, older car of a dark color with spots of paint on one side of it. Mr. Conway then drove back to Pump and Pak where the police had arrived and gave them the license number and a description of the car and man.

This information was dispatched to other police units. As Officer Ninemire was driving past the restaurant, a car containing an individual matching the dispatched description pulled out in front of him. The officer radioed for a registration check on the vehicle. He continued to follow the car and in the middle of the block on 11th Street, the door on the driver's side opened for a few seconds and closed again. Shortly thereafter the car was pulled over and Mr. Wade stepped out wearing dark coveralls that were partially off and hanging about his waist.

The clerk and Mr. Conway were brought to the scene of the arrest and both identified Mr. Wade as the robber. Mr. Wade was taken into custody and advised of his *Miranda* rights by Officer Espinoza. He indicated he did not want to talk and requested an attorney. Officer Espinoza asked him no more questions, arrested him for robbery, and transported him to the station. At the station Officer Nelson asked Mr. Wade if he would consent to a search of his vehicle. Mr. Wade said no and stated he probably should talk to an attorney. Mr. Wade's clothing, including the dark coveralls, was taken by the police. Three rounds of .38 caliber ammunition were found in his pant pocket. The police found the gun in the area where the car door had been momentarily opened while the police were following him.

Officer Jensen, who knew Mr. Wade, went to the booking area where Mr. Wade was being processed. Officer Jensen told Mr. Wade where to find him if he wanted to talk. Later Officer Jensen was asked to take Mr. Wade's photo. Officer Jensen testified at that time Mr. Wade said to him: "When you get time come up and see me. Referring to up in the jail. And I said well, I've got a few minutes now if you want to talk we can talk now. And Willie said okay." Officer Jensen then read Mr. Wade his rights. Mr. Wade signed a waiver form and then admitted the armed robbery of Pump and Pak. He also consented to a search of his vehicle. Mr. Wade refused to make a statement on tape and at that point was given a list of public defenders. At trial he denied his involvement in the robbery and the contents of the statement he made to Officer Jensen. He was found guilty as charged and was sentenced under the sentencing reform act. In fixing his sentence, the court considered as part of his criminal history a prior conviction for unlawful possession of a controlled substance. This appeal followed.

First, Mr. Wade contends the court erred in admitting the statements he made to Officer Jensen. He argues that once he invoked his *Miranda* rights, his request for an attorney should have been scrupulously honored pursuant to CrR 3.1(c)(2), and since it was not honored, any state-

ment he made thereafter to the police should not have been admitted. We disagree.

■ In *Miranda v. Arizona*, 384 U.S. 436, 479, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), the Court held the Fifth and Fourteenth Amendments' prohibitions against compelled self–incrimination require custodial interrogation be preceded by advice to the accused of his right to remain silent and his right to an attorney. If the accused requests an attorney, "the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474; *State v. Robtoy*, 98 Wn.2d 30, 35, 653 P.2d 284 (1982). Notwithstanding, *Miranda* recognizes that under certain circumstances the person being interrogated may waive his right to counsel. *Miranda*, 384 U.S. at 475. In that instance, the State has the burden of proving the waiver and voluntariness of the statement in the absence of an attorney by a preponderance of the evidence. *State v. Robtoy, supra* at 35–36; *State v. Grisby*, 97 Wn.2d 493, 505, 647 P.2d 6 (1982), *cert. denied*, 459 U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983); *State v. Kaiser*, 34 Wn. App. 559, 563, 663 P.2d 839 (1983).

> The waiver must be: (1) knowing; (2) voluntary; and (3) an intelligent relinquishment of a known right. Whether a waiver by the defendant is shown depends in each case "'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards v. Arizona*, 451 U.S. 477, 482, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981), quoting from *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938).

*State v. Robtoy, supra* at 36. The focus is on the defendant's background and experience, his conduct and the conduct of the police, and his understanding of his right to counsel and the charge against him. Once the accused invokes the right to counsel, the police may not requestion him until counsel has been provided, "*unless* the accused himself initiates further communication, exchanges, or conversations with the police." (Italics ours.) *Edwards v. Arizona*, 451 U.S. 477, 485, 68 L. Ed. 2d 378, 101 S. Ct. 1880

(1981); *State v. Robtoy, supra* at 37; *State v. Cornethan,* 38 Wn. App. 231, 234, 684 P.2d 1355 (1984); *State v. Kaiser, supra* at 563. If the accused initiates the conversation, then the police may listen to the voluntary, volunteered statements and use them against him at trial. *Edwards v. Arizona,* 451 U.S. at 485; *State v. Kaiser, supra* at 563.

Here, Mr. Wade was given his *Miranda* warnings and at two different times he requested an attorney. Later after his picture was taken, he indicated to Officer Jensen he wanted to talk. Officer Jensen then again read him his rights and Mr. Wade signed a waiver form. It is clear Mr. Wade initiated the conversation with Officer Jensen when he requested the opportunity to talk to him. He also signed a written waiver. As a result, Mr. Wade waived his *Miranda* rights and his confession was admissible.

█ Mr. Wade also seems to be arguing that once he requested an attorney, the police were obligated to immediately put him in contact with one. CrR 3.1(c)(2) provides:

> At the earliest opportunity a person in custody who desires counsel shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning counsel, and any other means necessary to place him in communication with a lawyer.

The robbery occurred between 5:45 and 5:50 p.m. on December 3, 1984. Less than 10 minutes later, at 5:57 p.m., Mr. Wade was first read his rights and then transported to the police station. At the station, he again requested an attorney. As the booking process was being completed, Mr. Wade initiated the conversation with Officer Jensen. At 6:45 p.m., less than an hour after he was initially stopped as a suspect, he was again advised of his rights and signed a waiver. In our view, Mr. Wade waived his right to counsel before the police had an opportunity to provide him with access to the phone and a list of attorneys who could possibly defend him. Thus, we find no error.

Second, Mr. Wade contends the court erred in using his prior conviction of unlawful possession of a controlled substance in computing his criminal history and sentence. We

find no error.

On March 7, 1980, Mr. Wade was convicted in Benton County of unlawful possession of a controlled substance (cocaine) pursuant to RCW 69.50.401(d). The maximum sentence for that offense is 5 years in prison which is equivalent to a class C felony. Mr. Wade was given a deferred sentence and on December 18, 1981, while RCW 9.95.240[1] was still in effect, an order of dismissal was entered. That section allowed for entry of an order of dismissal but contained the proviso:

> That in any subsequent prosecution, for any other offense, such prior conviction may be pleaded and proved, and shall have the same effect as if probation had not been granted, or the information or indictment dismissed.

Thus, even though a conviction has been dismissed, the effect of the conviction is preserved as to any subsequent prosecution for any other offense. *State v. Braithwaite*, 92 Wn.2d 624, 628, 600 P.2d 1260 (1979). Consequently, under RCW 9.95.240 Mr. Wade's previous conviction for unlawful possession of a controlled substance, even though dismissed, would be considered as part of his criminal history in computing his sentence.

The new Sentencing Reform Act of 1981 (SRA), effective July 1, 1984, has a 2-step process to clear the record of a convicted offender. First, RCW 9.94A.220 allows the sentencing court to discharge an offender once he has completed the requirements of his sentence. That statute further provides: "Nothing in this section prohibits the use of an offender's prior record for purposes of determining sentences for later offenses . . . ." Even though there has been a discharge, the conviction remains part of the offender's criminal history. Second, under RCW 9.94A.230(2), the court may not vacate the offender's conviction by dismissal if, among other things, "the offense was a class C

---

[1]That section is inapplicable to felonies committed on or after July 1, 1984. RCW 9.95.900.

felony and less than five years have passed since the date the applicant was discharged under RCW 9.94A.220." Once the conviction is vacated, it cannot be considered part of the offender's criminal history. RCW 9.94A.230(3).

Thus, even under the new SRA, Mr. Wade's prior conviction would still remain a part of his criminal history and could be used in computing his sentence because (1) less than 5 years had elapsed from the dismissal of his prior conviction which could not have been vacated under RCW 9.94A.230; and (2) under RCW 9.94A.220, with only a dismissal, the prior conviction remains a part of the offender's criminal history. Consequently, the court did not err by including the prior conviction in Mr. Wade's criminal history and using it to compute his sentence under the SRA.

Affirmed.

MUNSON and THOMPSON, JJ., concur.

Review denied by Supreme Court October 7, 1986.