# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

JILLIAN LINAE ALOISIO,

Appellant.

No. 82545-3-I

DIVISION ONE

UNPUBLISHED OPINION

APPELWICK, J. — Aloisio appeals from multiple convictions that flowed from a residential burglary and from a guilty plea related to driving under the influence. She claims evidence should have been suppressed because the officers violated CrR 3.1 when they did not make reasonable efforts to contact an attorney after she requested one. She challenges the sufficiency of the evidence that she knowingly possessed firearms. Aloisio argues her conviction for unlawful possession of a controlled substance must be vacated under Blake.[1] She argues her guilty plea lacks a factual basis and must be vacated. We vacate the convictions for possession of a controlled substance with prejudice, and authorize Aloisio to withdraw her plea. We otherwise affirm and remand for resentencing on the remaining convictions.

## FACTS

On July 9, 2018, Patrick McLauchlin came home from work to find his house "torn apart." He noticed his gun safe was missing. His wife, Sandra McLauchlin, realized all of her jewelry and "a bunch of" her medications were also missing. Patrick reported the

---

[1] State v. Blake, 97 Wn.2d 170, 481 P.3d 521 (2021).

burglary to law enforcement and provided a description of the property that had been taken.

Following the burglary, a person from the community contacted law enforcement and reported that Jillian Aloisio and Robert Olsen were responsible for the burglary at the McLauchlins' residence. Aloisio knew the McLauchlins, and had helped Sandra[2] sort her jewelry less than two weeks before.

On July 10, two deputies went to Olsen's residence. Olsen pulled up in a truck, and the deputies noticed a gun safe in the back of the truck. Olsen confessed to breaking into the McLauchlins' home stating that he was "only help[ing]" Aloisio.

The deputies next went to Aloisio's home. The deputies informed Aloisio that she was a suspect in a burglary. Deputy David Shaffer noticed Aloisio was wearing two rings. Deputy Shaffer photographed the rings and texted the photograph to Sandra, who identified one as hers. Deputy Shaffer began to inform Aloisio of her Miranda[3] rights, and Aloisio interrupted him and stated that she would not talk to him without an attorney.

Officers stopped talking to Aloisio and placed her into a patrol car. Deputy Seth Huber drove the patrol car around the corner from her home, to where her vehicle was parked, to complete the electronic booking form and the impound form, while waiting for transport for Aloisio and a tow truck to move Aloisio's car to the precinct. Deputy Huber testified that after 15 or 20 minutes in the back of the car, Aloisio asked to speak to Deputy Shaffer about the case. Deputy Shaffer was on the phone, attempting to procure a search warrant for Aloiso's residence and car. Deputy Huber drove Aloisio back to her house,

---

[2] Because Sandra and Patrick share the same last name, we refer to them by their first names. We mean no disrespect.

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

where Deputy Joseph Laiuppa transferred her to his patrol car to transport her to the jail. Aloisio told Deputy Laiuppa that she wanted to speak to another deputy. Deputy Laiuppa contacted Deputy Shaffer, who spoke with Aloisio. Deputy Shaffer testified that an hour and five minutes passed between reading Aloisio her <u>Miranda</u> rights and their second meeting.

Deputy Shaffer advised Aloisio of her <u>Miranda</u> rights again. Aloisio waived them, and stated that Olsen had "done the burglary," but that she had some of the stolen property at her house. Aloisio offered to show the deputies the stolen property in her home, and signed a consent to search form. Aloisio led the officers into a room "full of jewelry" and pointed out the stolen jewelry, to another room where the stolen medications were, and admitted to taking the gun safe as well. She then confessed to taking part in the burglary and that it had been her idea after losing money at a casino. She told the deputies she knew the McLauchlins "didn't lock their doors" and that they had jewelry and a gun safe.

Aloisio moved to suppress the evidence in her residence and her confession under CrR 3.5 and CrR 3.6. She argued that the deputies did not provide her with counsel as required under CrR 3.1. The trial court, in an oral ruling, denied Aloisio's motion to suppress statements and evidence under CrR 3.5 and CrR 3.6. The trial court found that the deputies did not violate CrR 3.1(c)(2) because the officer stopped questioning Aloisio immediately. It also found that it was impractical for Aloisio to call an attorney from the back of a patrol car and that waiting 15 minutes to an hour was not an unreasonable delay. It additionally found that no emergent situation existed to contact lawyers sooner.

The case proceeded to trial, where the jury found Aloisio guilty of residential burglary, theft of a firearm, theft in the first degree, unlawful possession of a firearm in the second degree, and unlawful possession of a controlled substance. Aloisio also pleaded guilty to a number of other crimes, including failure to have an ignition interlock device and driving while her license was suspended or revoked in the third degree. Aloisio was sentenced to prison for 102 months. Aloisio timely appeals.

## DISCUSSION

I. CrR 3.1(c)(2)

Aloisio argues the evidence against her should have been excluded because deputies failed to make reasonable efforts to provide her with access to an attorney as required by CrR 3.1. The State argues that the deputies did not violate Aloisio's CrR 3.1 right to an attorney because: (1) the deputies were engaged in proper routine prebooking procedures, (2) the trial court correctly found that it was impracticable for Aloisio to call an attorney from a patrol car, and that the time Aloisio waited on scene was not unreasonable, and (3) Aloisio waived her right to an attorney when she expressed her wish to talk. We agree.

CrR 3.1(c)(2) states, "At the earliest opportunity a person in custody who desires a lawyer shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning a lawyer, and any other means necessary to place the person in communication with a lawyer." Courts interpret this to require that officers employ reasonable effort to put someone who is in custody in contact with a lawyer. See State v. Kirkpatrick, 89 Wn. App. 407, 414, 948 P.2d 882 (1997). A

4

reasonable effort is a fact-based determination. See City of Bellevue v. Ohlson, 60 Wn. App. 485, 489 803 P.2d 1346 (1991).

To evaluate a CrR 3.1 claim, we look to whether the trial court "derived proper conclusions of law from its findings of fact" entered after a CrR 3.5 hearing, and we review the claims de novo.[4] State v. Pierce, 169 Wn. App. 533, 544, 280 P.3d 1158 (2012).

A. Reasonable Effort

Aloisio argues that the deputies failed to make a reasonable effort to contact an attorney, making her wait an hour when the deputies could have given Aloisio their phone to use in the back of the patrol car. But, making a reasonable effort does not mean immediate contact must be made with an attorney. State v. Wade, 44 Wn. App. 154, 159, 721 P.2d 977 (1986), abrogated on other grounds by In re the Pers. Restraint of Carrier, 173 Wn.2d 791, 272 P.2d 209 (2012). A 12 hour wait was held to be reasonable delay before providing contact with an attorney, where the officers were in the process of obtaining a search warrant and the public defender's office was closed. State v. Scherf, 192 Wn.2d 350, 372, 374-75, 429 P.3d 776 (2018).

Aloisio attempts to distinguish her case by showing that the deputies in this case did not reach the level of reasonable effort that excused delays in other cases. For example, in Ohlson, after transport to a police station, Ohlson asked for an attorney. 60 Wn. App. at 487. An officer made six attempts to contact the lawyer identified by Ohlson, but was ultimately unsuccessful. Id. Ohlson indicated he did not know any other

---

[4] Here, the trial court failed to enter written findings of fact and conclusions of law. While failure to enter written findings and conclusions is required under CrR 3.5(c), a sufficient oral record can enable appellate review. State v. Elkins, 188 Wn. App. 386, 396, 353 P.3d 648 (2015). Aloisio and the State agree that the oral ruling is sufficient for appellate review.

attorneys to call and decided to consent to a breath test without the advice of counsel. Id. at 488. This court held the officer made a reasonable effort in trying to contact a lawyer. Id. at 491. In Wakenight, another driving while under the influence case, Wakenight was taken to a police station. City of Seattle v. Wakenight, 24 Wn. App. 48, 49, 599 P.2d 5 (1979). He asked to contact a lawyer, but did not know any. Id. Nor did he give the officer the name of a friend to call. Id. The officer contacted the public defender but was informed they were not available for that offense. Id. at 49-50. When Wakenight again requested a lawyer, the officer gave him a phone and a current phonebook. Id. at 50. He turned to the attorney listings and made several unsuccessful calls. Id. He then finished videotaped physical tests and took a breath test. Id. The court found the officer's efforts reasonable. Id. at 51. Here, Aloisio waived her right to counsel prior to transport to a police station. Thus, there is no comparability with Ohlson or Wakenight.

Aloisio also relies on cases where delaying attorney contact was found to be unreasonable. For example, in Kirkpatrick, Lewis County detectives arrested Kirkpatrick at the Port Angeles Police Department. 89 Wn. App. at 409. Following Miranda warnings, Kirkpatrick conversed with officers for 90 minutes. Id. When he asked to leave and was told he could not, he demanded a lawyer. Id. The officers made no effort to assist him in contacting an attorney, and instead, set out on a four hour drive to Lewis county. Id. During the drive he initiated conversations with the officers, and said he did not want an attorney. Id. The court found the officers had made no effort, let alone a reasonable effort, to facilitate contact with a lawyer. See id. at 414. It also noted that Kirkpatrick made no knowing, intelligent, and voluntary waiver before the earliest opportunity to contact a

6

lawyer. Id. at 415. However, the facts here are distinguishable. The officers did not delay or deny Aloisio an opportunity to contact counsel while she was at a place where contact could readily be attempted. Instead, she waived her right to counsel prior to transport to the station.

In State v. Jaquez, Jaquez was a robbery suspect. 105 Wn. App. 699, 703, 715, 20 P.3d 1035 (2001). He was detained at the site of his arrest for an investigative showup identification. Id. Typically, the right to counsel does not attach at the showup under Bradford and Kirby. Id. at 714 (citing State v. Bradford, 95 Wn. App. 935, 947-48, 978 P.2d 534 (1999) and Kirby v. Illinois, 406 U.S. 682, 689, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972)). However, Jaquez made a request for counsel before the showup. Jaquez, 105 Wn. App. at 703. The officers did not take him to the station to facilitate contacting counsel. Id. Instead, the police detained him for 45 minutes waiting for the witness to perform the showup investigation. The court noted that similar to Kirkpatrick, the officers did not act on Jaquez's request at the earliest opportunity. Id. at 715. It found a violation of CrR 3.1(c)(2), but found the violation harmless, and reversed the case on other grounds. Jaquez, 105 Wn. App at 715. Jaquez does not address whether "at the earliest opportunity" requires that the officers needed to provide access to counsel while still in the field for routine prebooking procedures or that immediate transportation to the station to facilitate access to counsel was required. It makes clear only that after counsel was requested, efforts to contact counsel should have been made prior to proceeding with the showup identification. Id. at 715-16.

Unlike Jaquez, Aloisio was not detained after her request for counsel in order to subject her to a showup identification in violation of CrR 3.1(c)(2). Here, Aloisio does not

dispute that while she waited in the patrol car, Deputy Shaffer was in the process of obtaining a search warrant and Deputy Huber was completing an electronic booking form, waiting for a tow truck for Aloisio's car, and waiting for a transport officer. She does not allege that she was delayed beyond the time necessary for them to complete these activities. These were routine prebooking procedures. And, "reasonable effort" to provide contact with counsel does not mandate that the officers postpone "routine prebooking procedures or the execution of a search warrant." State v. Mullins, 158 Wn. App. 360, 369-70, 241 P.3d 456, 462 (2010). Her insistence on talking to Deputy Shaffer after being placed in the transport deputy's patrol car accounted for additional delays of her own making. These facts do not demonstrate unnecessary delay in violation of CrR 3.1(c)(2).

Aloisio cites to no cases requiring that a reasonable effort must be made to allow her to contact a lawyer at the site of arrest or in the back of a patrol car. The officers did not violate Aloisio's right to an attorney under CrR 3.1. Here, the trial court found that providing Aloisio access to an attorney in the back of a patrol car was not practical, that the best place to provide her with access was at the police station, and that the time she remained on scene before she waived her rights was not unreasonable. These were proper conclusions.

B. Waiver of CrR 3.1

The State argues that Aloisio waived her right to an attorney when she asked to speak to Deputy Shaffer after waiting in the car, he again advised her of her Miranda rights, and she insisted on talking to the officer. Aloisio states that upon this second meeting with Deputy Shaffer, "she agreed to waive" her Miranda rights and "talk about the break-in without an attorney present."

A person in custody can waive their CrR 3.1 right to an attorney invoked following Miranda warnings by initiating further conversation related to the crime with law enforcement. Wade, 44 Wn. App. at 158-59. In Wade, the police advised the defendant of his rights, he requested an attorney, and then asked to speak to police an hour later. Id. at 159. Police again advised him of his rights, and the defendant waived those rights. Id. The court held that this waiver was proper, even though the police had not provided the defendant an opportunity to contact an attorney during the hour wait. Id. Here, Aloisio's situation is very similar to the one in Wade. She invoked her right to counsel, waited an hour, asked to speak to police, was read her rights again, and then waived her rights. Following Wade, Aloisio waived her CrR 3.1 right to counsel the second time she spoke to Deputy Shaffer. There was no violation of Aloisio's right to counsel. The trial court did not err by admitting the evidence under CrR 3.5 and 3.6.

C. Harmless Error

If there were a violation of CrR 3.1, the court reviews the violation under the nonconstitutional harmless error standard. Jaquez, 105 Wn. App. at 716. "Failure to comply with CrR 3.1(c)(2) does not mean automatic suppression of evidence." Id. Under the harmless error standard, the defendant must show that the verdict would have been different if the error had not been made. See id. Aloisio implies that if she had been provided counsel sooner, she would have not taken the deputies into her home and shown them the stolen goods. But, Deputy Shaffer had received confirmation from Sandra that Aloisio was wearing one of the stolen rings before arresting her. And, Olsen had implicated her in the robbery. The officers had enough evidence to obtain a search warrant for the house and car, searches that would have yielded the same physical

evidence. Because nontainted evidence supports Aloisio's theft conviction, any potential violation of CrR 3.1 would be harmless error, and evidence need not be suppressed.

II.    Unlawful Possession of a Firearm

Aloisio argues that the State failed to prove that she knew there were guns inside the gun safe, as required to prove knowing possession of a firearm.

Knowing possession of a firearm is reviewed for sufficiency of the evidence. State v. Semakula, 88 Wn. App. 719, 722, 946 P.2d 795 (1997). "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). The reasonable inferences should be interpreted "most strongly against the defendant." Id. This court reviews whether the State's evidence was sufficient beyond a reasonable doubt to support that Aloisio was knowingly in possession of a firearm.

Aloisio had previously been convicted of a felony that is not a serious offense. Because of this prior conviction, Aloisio would be guilty of second degree unlawful possession of a firearm if she owned or possessed one. RCW 9.41.040(2)(a)(i). Unlawful possession of a firearm requires "knowing possession." State v. Anderson, 141 Wn.2d 357, 359, 5 P.3d 1247 (2000). Therefore, the State must prove beyond a reasonable doubt that Aloisio knowingly possessed firearms within the gun safe.

Aloisio stole the gun safe. Aloisio also stole ammunition that was not inside the gun safe. After the robbery, she offered to sell a gun to a friend. Directly after showing the officers the stolen property, the officers asked her what was in the safe. She responded, "'Probably guns.'" The record does not demonstrate that she had access to firearms other than those in the safe. Viewing the evidence in the light most favorable to the State, Aloisio knew that the gun safe contained firearms.

There was sufficient evidence to prove that Aloisio unlawfully and knowingly possessed a firearm.

III.    Unlawful Possession of a Controlled Substance

Aloisio was convicted of three counts of unlawful possession of a controlled substance under RCW 69.50.4013(1). One of the convictions concerned Aloisio's theft of Sandra's prescription Xanax, and two were included in Aloisio's guilty plea. Aloisio argues, and the State concedes, that the newly decided State v. Blake, holding RCW 69.50.4013 unconstitutional, mandates that her convictions be vacated. 197 Wn.2d 170, 195, 481 P.3d 521 (2021). Aloisio's conviction of unlawful possession of a controlled substance (Xanax) should be vacated and the case remanded for resentencing. The same applies to the unlawful possession of a controlled substance charges under the plea agreement.

IV.    Guilty Plea

Aloisio pleaded guilty to a number of charges,[5] including failure to have an ignition interlock and driving with a suspended license. The court accepted the plea and entered

_____

[5] The complete list of charges in this guilty plea include trafficking in stolen property in the first degree; failure to have ignition interlock; driving while in suspended or revoked status in the third degree; unlawful possession of a controlled substance: cocaine;

judgment for both crimes. Aloisio argues that the record lacks any factual basis to support the guilty plea for these two crimes, and that she should be able to withdraw her plea to these two counts. The State agrees that remand is required, but not because there is no factual basis for these claims. Instead, the State argues it should be withdrawn, because Aloisio did not affirmatively agree that the court could review the probable cause determination to establish a factual basis for the plea.

Under CrR 4.2(d), "The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." The factual basis must be part of the record at the time of the plea. State v. Osborne, 102 Wn.2d 87, 95, 684 P.2d 683, 689 (1984).

In Aloisio's plea, she mentioned several crimes, but did not mention that she did not have an ignition interlock or driving with a suspended license. The State points out that the probable cause declaration included that Aloisio had a suspended license and required an ignition interlock device. However, the State concedes that Aloisio did not affirmatively agree that the court could review this declaration to create a factual basis for the plea.

The court lacked a factual basis for accepting the plea for these crimes. Aloisio is entitled to withdraw her plea agreement as to these two crimes and to have the convictions vacated.

---

unlawful possession of a controlled substance: methamphetamine; nine counts of identity theft in the second degree; and possession of stolen mail.

We vacate the convictions for possession of a controlled substance with prejudice, and authorize Aloisio to withdraw her plea.  We otherwise affirm and remand for resentencing on the remaining convictions.

_Appelwick, J._

WE CONCUR: